STATE OF MINNESOTA *vs.* GEORGE KANTLER.          33  69
                                                   44  275

## January 6, 1885.

**Municipal Corporations—Minneapolis—Meetings of City Council— Determination of Time for Holding.**—A city charter requiring the city council to hold "stated meetings," but making no provision as to the manner in which the time for the holding of such meetings shall be fixed, the city council may, upon simple motion, prescribe such time, and the time for the holding of stated meetings may be changed by the action of the city council alone, upon mere motion, although it had been previously fixed by a formal resolution, approved by the mayor, and published.

**Sale of Intoxicating Liquors—License Districts—Ordinance Unconstitutional in Part.**—A city ordinance prohibiting the sale of liquor without a license, and imposing certain regulations upon the business, among which was one restricting it to certain districts of the city *to be designated by the mayor*, considered unconstitutional as to the last-named attempted restriction, but otherwise valid.

**Same—Amendment of Ordinance.**—A subsequent amendment of the unconstitutional portion of the ordinance—the amendment designating the districts within which only the business might be authorized by license— *held* a valid amendment.

**Same—Sale Outside of License District.**—Under such an ordinance, selling intoxicating liquor outside of such license districts, without a license, constituted the prescribed offence of selling without a license.

The defendant was arrested, tried, and convicted in the municipal court of Minneapolis, on complaint for selling intoxicating liquor without a license, on June 19, 1884, contrary to the ordinance of the city; and he appeals from the judgment entered upon the conviction and from an order refusing a new trial.

The ordinance relating to liquor licenses and the sale of intoxicating liquors, as at first adopted in April, 1884, was as follows, viz.:

"An ordinance to license and regulate all persons vending, dealing in or disposing of spirituous, vinous, fermented or malt liquors.

"The City Council of the city of Minneapolis do ordain as follows:

"Section 1. No person shall sell, vend, deal in or dispose of any spirituous, vinous, fermented or malt liquors or beverages, for any use or purpose whatever, in or at any building or other place within the limits of the city of Minneapolis, without first having obtained a license therefor in the manner herein provided.

"Sec. 2. No person shall be licensed to sell, vend, deal in or dispose of any spirituous, vinous, fermented or malt liquors or beverages for any use or purpose whatever, in or at any building or other place within the limits of the city of Minneapolis—

"1. Who is under twenty-one years of age.

"2. Who has been convicted of a violation of this ordinance, within one year last past before the date of his application for such license.

"3. Who has been licensed under the terms of this ordinance, and whose license has been revoked by the mayor, city council or municipal court of the city of Minneapolis under section 16, chapter 4, of the charter of the city of Minneapolis, within one year last past before the date of his application for such license.

"4. Who does not intend to superintend, in person, the management of the business licensed, and who will not, when so licensed, so superintend, in person, the management of the business so licensed.

"5. Who does not intend to carry on such business for himself and not as agent for any other person, and who will not, when so licensed, so carry on such business for himself, and not as agent for any other person.

"6. Who is at the time of making his application for such license, the owner of, or licensee named in, a license issued under this ordinance.

"7. Who intends, if licensed, to carry on his business, or who will, when so licensed, carry on his business, within four hundred feet of any public school-building, or within two hundred feet of any park or park-way.

"8. Who intends, if licensed, to carry on his business, or who will, when so licensed, carry on his business, in or adjacent to any building wherein theatrical or variety entertainments of any kind are at the time of the application for such license, or may thereafter be, conducted or carried on, provided that this provision shall not apply to theatrical entertainments or employments as a profession or as an occupation.

"9. Who intends, if licensed, to carry on his business, or who will, when licensed, carry on his business, outside of those districts in said city which shall hereafter be designated and known as 'active patrol districts,' to be designated as hereinafter required.

"Sec. 3. Any person desiring a license to sell, vend, deal in or dispose of any spirituous, vinous, fermented or malt liquors, or beverages, in said city of Minneapolis, shall make an affidavit and file the same with the city clerk of said city, in which affidavit said person shall state fully and explicitly:" (the statements required in the affidavit are to the effect that the applicant does not come within the prohibitions of section two.)

Sec. 4. (This section relates to the filing of a bond.)

Sec. 5. (This section relates to the issuance of a license by the officers of the city, upon the certificate of the clerk that the applicant has complied with the above provisions.)

"Sec. 6. All licenses granted under this ordinance shall expire on the first Monday in May next after the same shall be issued, unless sooner revoked.

"Sec. 7. No license granted under this ordinance shall be assignable.

"Any license issued under the provisions of this ordinance shall be void if the business permitted thereby is removed to any other locality than the one described in said license, unless the owner thereof shall before such removal file with the city clerk a supplemental affidavit, giving the information required by paragraphs two, eight, nine and ten of section 3 of this ordinance. If it shall appear from said affidavit that the proposed location of the business conforms to the requirements of this ordinance, then the city clerk shall so certify to the city comptroller, who, when said license is presented to him, shall

endorse upon its face permission to remove the licensed business to the location described in the supplemental affidavit, and shall note such removal in the books of his office.

"Nothing in this section shall be construed as prohibiting the executor or administrator of any deceased licensee from continuing the licensed business during the term of decedent's license, subject to all the conditions of this ordinance."

Sec. 8. (This section fixes the license fee at $500.)

"Sec. 9. The mayor of said city shall designate such portions of said city as he shall deem best, to be known and designated as 'active patrol districts,' and shall submit the same to the city council for its approval, and, when approved by said city council, the same shall be and become the districts of said city which shall be constantly patrolled by the police force of said city under the instructions of said mayor. Said active patrol districts may be changed at any time by said mayor by the like approval of said city council."

Sec. 10. (This section relates to closing of saloons, etc., on Sundays, etc., and to conduct and behavior in and about such places.)

"Sec. 11. The city comptroller shall keep a record of all licenses issued by him, stating to whom issued and for what purpose, and for what length of time, and for what sum of money, and the room and rooms and place where the business is to be carried on."

Sec. 12. (Relates to sales to habitual drunkards.)

Sec. 13. (Relates to revocation of license by mayor for violation of provisions of this ordinance.)

"Sec. 14. If any person shall violate any of the provisions of this ordinance, he shall, on conviction thereof before the municipal court of said city, be punished by a fine of not less than twenty-five dollars nor more than one hundred dollars, and the costs of prosecution, and be imprisoned in the city prison or county jail for not less than thirty days nor more than ninety days. And the court, upon such conviction, if the person so convicted shall hold a license under the provisions of this ordinance, may upon first conviction, and upon second conviction shall, in addition to the punishment above provided, revoke such license, as authorized and required to do in section sixteen (16) chapter four (4) of the city charter.

"After the the revocation of any license as above provided for, the person whose license is so revoked shall not be entitled to take out or receive any other license as a liquor dealer for one year from the date of such revocation."

Sec. 15. (Excepts druggists from the operation of the ordinance.)

"Sec. 16. All ordinances and parts of ordinances conflicting with the provisions of this ordinance are hereby repealed.

"Sec. 17. This ordinance shall take effect and be in force from and after its publication.

"Passed April 26th, 1884.

"C. W. CLARK,

"President of the Council.

"Attest:

"SELAH MATHEWS, City Clerk.

"Approved April 28th, 1884.

"GEO. A. PILLSBURY, Mayor."

The amendment passed on June 9, 1884, and referred to in the opinion, was as follows, viz.:

"An ordinance amending an ordinance entitled 'An ordinance to license and regulate all persons vending, dealing in or disposing of spirituous, vinous, fermented or malt liquors,' passed April 26th, 1884, and approved April 28th, 1884.

"The City Council of the city of Minneapolis do ordain as follows:

"Section 1. That that certain ordinance entitled 'An ordinance to license and regulate all persons vending, dealing in or disposing of spirituous, vinous, fermented or malt liquors,' passed April 26th, 1884, and approved April 28th, 1884, be and the same hereby is amended as follows:

"1st. By striking out the word 'hereafter' in the fourth line of the 9th subdivision of section 2 of said ordinance, and inserting in the place thereof the word 'hereinafter;' and by striking out the words 'to be designated as hereinafter required,' in the fifth and sixth lines of said 9th subdivision of said section 2 of said ordinance.

"2d. And by striking out the whole of section 9 of said ordinance and inserting in place thereof the following words and figures, to

wit: 'Section 9. All that part of the territory of said city embraced within the lines and limits below described, are hereby designated as, and they shall be, the "Active patrol districts" of said city, as follows, to wit:' " (Then follows a description by metes and bounds of the "Active patrol districts.")

(Sections 2, 3 and 4 are amendments of sections 2, 3, 7 and 14 of the original ordinance not material in this case.)

"Section 5. This ordinance shall take effect and be in force from and after its publication.

"Passed June 9th, 1884.

"C. W. CLARK,

"President of the Council.

"Attest:

"SELAH MATHEWS, City Clerk.

"Approved, June 12, 1884.

"GEO. A. PILLSBURY, Mayor."

*Chas. A. Ebert* and *John H. Long*, for appellant.

Ordinances being among the most important and solemn acts of a corporation, it is essential to their validity that they shall be adopted not only by the proper body, but the legislative body must also be *duly* assembled. The amendatory ordinance was not brought to its first reading at a regular and legal meeting. The charter provides that "the city council shall hold stated meetings," but does not fix the time of holding them. The power to fix the time of holding these meetings is left to the council, to be exercised by them like any other power vested in them requiring legislative action,—that is to say, by ordinance or resolution passed in the manner provided in the charter. 1 Dillon, Mun. Corp. §§ 223, 244; *State* v. *Jersey City*, 27 N. J. Law, 493; *Dey* v. *Jersey City*, 19 N. J. Eq. 412. The time of holding the meeting at which this ordinance was first read was fixed by a mere motion in the council. This cannot be considered equivalent to a resolution, which requires an affirmative vote of a majority of all the members of the city council, by ayes and nays, the approval of the mayor, and publication thereof in the official paper of the city. (City Charter, Sp. Laws 1881, *c.* 76, *subc.* 3, § 1, and *subc.* 4, § 9.)

Section 9 of the original ordinance is unconstitutional and void.

1 Dillon, Mun. Corp. § 60; *Thompson* v. *Schermerhorn*, 6 N. Y. 92; *Coffin* v. *Nantucket*, 5 Cush. 269; *County of Hennepin* v. *Robinson*, 16 Minn. 340, (381;) *Darling* v. *City of St. Paul*, 19 Minn. 336, (389;) *In re Wilson*, 32 Minn. 145. An act attempting to amend an original section which was void, is also void. *Cowley* v. *Town of Rushville*, 60 Ind. 327; *Board of Clay Co.* v. *Markle*, 46 Ind. 96; *Blakemore* v. *Dolan*, 50 Ind. 194; *Ford* v. *Booker*, 53 Ind. 395.

The ordinance does not regulate and license the sale of intoxicating liquor in the portions of the city not embraced within the so-called "active patrol districts," but absolutely prohibits. As to these portions of the city no license to sell can be obtained, and "there is a manifest incongruity in charging" defendant "with the offence of selling without a license." *State* v. *Hanley*, 25 Minn. 429. In this case the offence alleged did not take place in the "active patrol districts."

*State* v. *Langdon*, 29 Minn. 393, is distinguishable from the present case. This is a prosecution under a city ordinance; that was a prosecution under the general law of the state.

*Frank H. Carleton* and *Judson N. Cross*, for the state.

DICKINSON, J. The defendant was convicted upon a prosecution for selling intoxicating liquor without a license, in violation of an ordinance of the city of Minneapolis. The ordinance was originally enacted in April, 1884, and was amended in June, 1884. The grounds upon which the defendant contests the legality of the conviction may be thus stated: (1) The amendatory ordinance was not legally enacted, because its first reading was not at a legal meeting of the common council; (2) the original ordinance was unconstitutional and void, and it was not rendered valid by the amendment, which did not, in terms, re-enact the original ordinance, but merely amended the portions of it which had involved the unconstitutional features; (3) the ordinance, as amended, absolutely prohibits the sale of liquors in the city outside of certain prescribed districts, and the act alleged against the defendant, being done outside of such districts, did not constitute the offence of *selling without a license.*

1. The charter provides (Sp. Laws 1881, *c.* 76, *subc.* 4, § 2,) that "the city council shall hold stated meetings, and the mayor may call special meetings by notice. * * * It shall determine the rules

of its own proceedings, and have power to compel the attendance of absent members." No provision is made as to the manner in which the times for the holding of the stated meetings of the council shall be prescribed. At a legal meeting of the council, on the 23rd of April, 1884, a formal *resolution* was adopted, designating the second and fourth Saturdays of each month as the times for holding future stated meetings. This resolution was approved by the mayor, and published as prescribed by the charter in respect to all *resolutions* and *ordinances*. At a regular meeting on the 30th of April, 1884, by a simple *motion*, then passed, the council designated the first and third Wednesdays of each month for the holding of future stated meetings. The amendatory ordinance was first introduced and read at a meeting held on the first Wednesday of June, 1884, (June 4th.) The legality of this meeting, as a stated meeting, is called in question.

In the absence of any provision designating the manner in which the times for holding stated meetings of the council should be fixed, the city council had the power of determination. It required only such action on their part as expressed the will of that body. No more was required than the adoption of a simple motion. Approval by the mayor and publication were both unnecessary, and added nothing to the force of the adoption of the resolution by the council. The council was in no measure divested of the power of determination which the charter, in effect, confers solely upon it, by the fact that the mayor had formally approved its first action in the premises; nor did the fact that the will of the council had been expressed in the form of a resolution, and had been published, render necessary that in all subsequent action taken by that body the same formalities should be observed. The meeting of June 4th was therefore a legal stated meeting of the city council.

2. The principal ground upon which it is claimed that the ordinance, as amended, is void, rests upon the fact, declared by this court in *In re Wilson*, 32 Minn. 145, that section 9 of the original ordinance was unconstitutional, in that it delegated to the mayor the duty of designating the "active patrol districts," outside of which it was in effect declared by the ordinance that the selling of liquor should not be authorized by license. It is contended that, section 9 of the orig-

inal ordinance being void, the attempted amendment of it by an ordinance in terms striking out that section, and in place thereof declaring the territory which should constitute the "patrol districts," was also void. It may be conceded, without consideration, that if the entire original ordinance had been void, either because of some defect in the mode of its enactment, or from any other cause, the mere amendment of section 9 would not have been effectual to create a valid and enforceable ordinance. Beyond this the authorities cited by appellant do not go. But that the invalidity of section 9 had not the effect to render invalid the whole ordinance, is apparent from a consideration of the terms of the ordinance, and from the obvious intention of the city council.

The ordinance was enacted pursuant to legislative authority (Sp. Laws, 1881, *c.* 76, *subc.* 4, § 5,) to "license and regulate   *   *   * all persons vending   *   *   *"   intoxicating liquors, and to "restrain any person from vending   *   *   *   unless duly licensed by the city council." We will indicate in general terms the principal provisions of the ordinance. Section 1 of the ordinance enacts that no person shall sell, etc., within the city "without first having obtained a license therefor in the manner herein provided." Section 2 designates several classes of persons to whom it is declared that no licenses shall be granted, such as minors, those who have been convicted of violations of the ordinance or have had a license revoked, those who intend to carry on the business as agents for other persons or within a prescribed distance of a public school-building, etc., (subdivision 9,) those who intend to carry on the business "outside of those districts in said city which shall hereafter be designated and known as active patrol districts, to be designated as hereinafter required." Section 3 is to the effect that any person desiring a license shall make an affidavit stating, among other things specified, his name, age, and place of residence, the exact place where he proposes to carry on the business, and whether he proposes to conduct it for himself or as agent for another, whether he has been convicted of a violation of the ordinance or has had a license revoked, whether his place of business is to be within the prescribed distance from any public school-building, etc., and (subdivision 10) whether or not the proposed place of busi-

ness is within those districts which have been duly designated as active patrol districts.    Section 4 requires the filing of this affidavit and of a prescribed bond.    Section 8 requires the payment of a prescribed license fee.    Section 9 delegates to the mayor the duty of designating the active patrol districts, which designation is to be submitted to the city council for its approval.    No time is prescribed when or within which such designation shall·be made.    Section 10 provides that every saloon and the bar of every inn, and other places where liquors are sold by the glass, shall be closed on Sundays, and on state and city election days, and forbids the sale of spirituous liquors on these days; forbids the·sale to minors or habitual drunkards; declares that gambling shall not be permitted in places where liquor is sold, and that prostitutes and persons of evil name shall not be employed in or allowed to frequent such places; forbids the sale of liquors during certain hours of the night, and imposes other restrictions and regulations. Section 14 imposes a penalty for the violation of any of the provisions of the ordinance.

It is apparent from the terms of the enactment that the city council intended it to be effectual to confine the traffic in spirituous liquors within the limits of the city to those who should be specially authorized by license to engage in it, and to ordain certain conditions with respect to the granting of licenses, and certain regulations and restrictions pertaining to the business.    It was contemplated as one means of regulating the traffic, even in the hands of licensees, that it should be confined to defined districts of the city, to be specifically designated, and it was with a view to the accomplishment of this purpose that section 9 was enacted, providing for the appointment of those districts by the mayor.    The enactment of subdivision 9 of section 2, and subdivision 10 of section 3, was directed to the same end. These subdivisions were so intimately related to the provisions of section 9, that, in the absence of any other ordinance defining the patrol districts, they could be operative only in connection with that section. The provision made by section 9 for determining the districts within which it was intended to confine the traffic being void, the subdivisions just referred to were necessarily inoperative, and incapable of enforcement.    Thus the purpose of the council of local restriction, which

was sought to be carried into effect by those divisions of the ordinance, failed of accomplishment. But this fact affords no sufficient reasons for a judicial declaration that the remaining portion of the enactment should not be enforced. The prohibition against selling liquors within the city limits, without a license, is distinct, absolute, unqualified, and apparently in no manner dependent upon the provisions with respect to local restriction. The same may be said of the other portions of the ordinance, which prescribe conditions with respect to the granting of licenses, and impose numerous regulations and restrictions concerning licensees and their business.

Disregarding as invalid and inoperative those provisions of the ordinance above referred to, which are directed to the end of local restriction, the remainder may stand as a complete ordinance, clearly expressing the intention of the legislative body enacting it, and capable of being carried into full effect. It is not, either in the nature of its provisions or in its structure, made dependent upon section 9. The provisions and the purposes of the main body of the ordinance, and of that portion which is invalid and not enforceable, are distinct and separable; the failure of the latter does not modify the operation or affect the construction of that which remains. There is no reason apparent to justify a court, in the exercise of its duty of construing and enforcing the law, in the conclusion that the city council would not have enacted the ordinance prohibiting the sale of intoxicating liquors without a license, and imposing the regulations and restrictions there declared, except in connection with the provisions for local restriction. That the city council did enact such an ordinance, and that its provisions were not apparently in any way dependent upon the accomplishment of the purpose of local restriction, is sufficient to indicate our duty to give effect to the law. As we construe the ordinance, the case is quite within the principles which, according to the authorities, sustain the enactment, except only as to those provisions which were in themselves void. *Com.* v. *Hitchings*, 5 Gray, 482; *State* v. *Wheeler*, 25 Conn. 290; *Gordon* v. *Cornes*, 47 N. Y. 608, 615, 617; *People* v. *Briggs*, 50 N. Y. 553, 565, 566; *Mayor* v. *Dechert*, 32 Md. 369; *Lynch* v. *The Economy*, 27 Wis. 69; *Tiernan* v. *Rinker*, 102 U. S. 123; Cooley, Const. Lim. 212.

There is another reason contributing to the conclusion that the city council are to be regarded as having intended that the ordinance should go into effect independently of those provisions becoming operative which were designed to restrict the business to defined limits within the city. By its terms the ordinance was to "take effect and be in force from and after its publication;" while the time when the restriction of the traffic to defined districts should become effective was not fixed, but was left to depend upon the future action of the mayor, and the approval of that action by the city council.

Our conclusion is that the unconstitutionality of section 9 resulted only in rendering the ordinance ineffectual as to the appointment of patrol districts, and the restricting of the business by licensees to such districts, and that as to the rest the ordinance was valid. This being so, the amendment in question was effectual which enacted that section 9 should be stricken out, and properly designated certain portions of the city as active patrol districts, and so amended subdivision 9 of section 2 as to make it conformable to the change thus effected.

The ordinance was fitly entitled "An ordinance to license and regulate all persons vending," etc.

3. Under the ordinance as amended, the defendant was properly charged and convicted of the offence of *selling without a license*. The restriction of the business to defined districts within the city is a proper *regulation* of the traffic, (*In re Wilson*, 32 Minn. 145,) which all licensees may be required to observe. As a means of securing conformity with this regulation, applicants for license are required, among other things, to state whether or not the place where they intend to carry on the business is within the now properly designated districts, and if it thus appears that the applicant intends to disregard the restriction and to sell outside of those limits, it is declared in effect that no license shall in such case be granted. The effect of this is not to render inoperative, or impossible to be complied with, the requirement that all persons who would engage in the business within the city shall procure a license therefor. This part of the ordinance prevents from obtaining a license only such persons as refuse to comply with the regulation ordained with reference to the places where the business may be carried on. Selling without a

license is within the distinct prohibition of the enactment, and it is not material that no license could have been procured authorizing the business to be carried on at *that place* within the city where the sale charged was made. *State* v. *Langdon*, 31 Minn. 316. This decision is not opposed to that in *State* v. *Hanley*, 25 Minn. 429, relied upon by the appellant. That case is not applicable as authority here. See comment upon that case in *State* v. *Langdon, supra.*

Order and judgment affirmed.