WELLS *v.* TORREY.

1. MUNICIPAL CORPORATIONS—ORDINANCES—POLICE REGULATIONS —INTOXICATING LIQUORS — LICENSES — VALIDITY — REGULATION OR REVENUE.

A city council being authorized by charter to restrain, license, and regulate saloons, adopted an ordinance requiring saloonkeepers to apply to the council for license by written application approved by a certain number of reputable citizens, pay a fee of $500 therefor, and accept the license subject to the right of the council to revoke it at any time upon notice and hearing, and providing a penalty for violation of any of its provisions.   *Held*, that the exercise of the charter power was for the purpose of regulation and not revenue, that the license

144 MICH.—44.

144   689
f146   ¹168
144    689
150    ¹458
144    689
153    ²100
144    689
157    ¹ 27

was not unreasonable in amount, and need not be passed by a two-thirds vote as is required in case of imposing a tax.

2. INTOXICATING LIQUORS—LICENSE—ORDINANCE—VALIDITY.
   A city ordinance requiring saloonkeepers to apply to the city council for license by written application accompanied by the approval of a certain number of reputable citizens and containing an agreement to accept the license subject to the condition that it may be revoked at any time by the council, and providing for the revocation of licenses by the council on notice and a hearing, is not invalid because it allows any one to be disqualified from business by the mere will of the council, does not permit the applicant any hearing on the facts nor assure him any hearing which can be examined by a competent court in case of capricious abuse, and permits the same persons to be judges of the proper causes of rejection and of the fitness of persons under such causes.

3. CONSTITUTIONAL LAW—PERSONS ENTITLED TO RAISE QUESTIONS.
   Where mandamus is applied for to compel a justice of the peace to entertain a complaint for engaging in the business of liquor selling without complying with a city ordinance, and it does not appear that the person against whom the complaint is made has complied with the ordinance or offered to, the objection that the ordinance is unreasonable, and empowers the council to act in a capricious and arbitrary manner in its enforcement, will not be considered; it being time enough to consider such questions when a case arises involving such conduct.

Certiorari to Genesee; Wisner, J. Submitted June 26, 1906. (Calendar No. 21,794.) Decided July 3, 1906.

Mandamus by Frank L. Wells to compel James M. Torrey, justice of the peace, to entertain a complaint and issue a warrant. There was an order granting the writ, and respondent brings certiorari. Affirmed.

The common council of the city of Flint has power to enact ordinances:

"To restrain, license and regulate saloons and other places where intoxicating or spirituous liquors or malt, brewed, fermented spirituous, or vinous liquors are sold or to be sold, and to regulate and prescribe the location

thereof; to forbid and prevent the vending or other disposition of any intoxicating liquors in violation of the laws of the State." Act No. 372, Local Acts 1903, chap. 14, § 10, subd. 37.

The common council passed an ordinance by a majority vote (a two-thirds vote is required for imposing a tax), approved February 28, 1906, to restrain, license, and regulate saloons and other places where intoxicating liquors are sold, and prescribing the location thereof, in and by the terms of which persons are forbidden to engage or continue in the business of selling liquors in the city without having obtained a license from the common council. It is required that persons desiring to engage in such business shall make application in writing to the common council for a license, stating the number or location of the place where the business is to be carried on, accompanied by a recommendation signed by at least 12 reputable citizens, certifying to the good reputation, fame, and moral character of the applicant, and containing an agreement on the part of the applicant that he will accept the license if it is granted him upon the condition that it may be revoked at the will of the common council. The applicant is required to pay into the city treasury the sum of $500, take the treasurer's receipt therefor, and deliver such receipt to the city clerk with his application for the license. The ordinance further provides that the common council may at any time revoke any license granted under the ordinance and order the business closed "and all licenses granted hereunder are issued and accepted with the understanding that they are subject to revocation at the will of the council." A subsequent section of the ordinance provides that, before any such license is revoked, charges in writing shall be preferred against the licensee, presented to the common council, a time and place fixed for hearing, and notice of the charges given to the licensee and of the time and place of hearing. The licensee is given the right to be represented at such a hearing by counsel and to produce written or oral evidence. The

ordinance further provides that, if any person shall violate any of the requirements or provisions of the ordinance, upon conviction he shall be punished by a fine of not less than $25 or more than $100, or by imprisonment, etc.

It appears by the record that on May 15, 1906, one George Webb was engaged in the business of selling liquors in the city of Flint without a license. The chief of police, the relator, tendered to James M. Torrey, a justice of the peace of the city, a complaint in writing, charging said George Webb with having on the day aforesaid unlawfully engaged in and continued in the business of selling and keeping for sale spirituous and other liquors as a beverage at a certain place in the city of Flint without having first obtained a license for that purpose from the common council, according to the terms of the ordinance hereinbefore referred to. The justice refused to entertain the complaint and refused to issue a warrant for the arrest of the said Webb. The chief of police thereupon applied to the circuit court for the county of Genesee for a writ of mandamus to be directed to the said justice, commanding him to entertain said complaint and issue a warrant thereon, and in answer to the order to show cause which was issued out of the circuit court the said justice gave the following reasons why relator was not entitled to said writ:

" *First.* That while the city of Flint has a population of upwards of 15,000, and that there are now 24 licensed places where intoxicating liquors are sold at retail therein, and while its extensive manufacturing and trade interests attract a large number of persons daily who reside outside of the city of Flint, and while it is true that the expense of maintaining the police department the past year was $4,440.42, and that an increase in the number and expense of said police force has been recommended by the common council of said city, and while this respondent is satisfied that the total sum received yearly from the imposition of such license would be practically all expended for the additional labor of its officers and expenses thereby imposed on account of the liquor traffic in said city, yet this respondent is not able to say with certainty that no revenue

will result to the city of Flint in excess of such expense.

"*Second.* That this respondent does not feel justified in ordering an arrest or imposing a sentence of imprisonment pursuant to the terms of said ordinance, the validity of which is questioned."

Upon a hearing, the validity of the ordinance was sustained, and an order was made that the writ issue. Thereupon the respondent sued out a writ of certiorari, by which writ all of the proceedings were removed to this court for review. In the application for the writ of certiorari, the following reasons are set out as ground for reversing the order of the court below:

"1. That the ordinance under which this complaint is based is an ordinance of the city of Flint, and that the said ordinance is unreasonable, prohibitive, excessive, and oppressive.

"2. The ordinance attempts to license the sale of intoxicating liquors which is not authorized by the charter of the city of Flint.

"3. That said ordinance inflicts an unreasonable penalty and forfeiture of property.

"4. That said ordinance allows any one to be disqualified from business on the mere will of the common council of the city of Flint.

"5. That said ordinance does not by its terms or intent operate as an ordinary license law limiting the number of vendors.

"6. That said ordinance does not permit the applicant any hearing on the facts, nor is he assured or given any hearing under said ordinance which could be examined by any competent court in case of capricious abuse.

"7. That said ordinance permits the same person to be the judges of the proper causes of rejection as well as of the fitness of persons under such causes, and subjects every one to the mere will of the common council, and submits all persons' rights to engage in business to the discretion of the common council.

"8. That the effect of said ordinance is to levy a special tax which the city of Flint cannot do, and if it could said ordinance is not passed by the requisite number of aldermen elect."

Our attention has not been directed to any provision of

the charter of the city of Flint, and an examination has discovered none, permitting the raising of revenue by way of taxation upon the business of selling intoxicating liquors.

*John H. Farley*, for relator.

*Black & Roberts*, for respondent.

OSTRANDER, J. (*after stating the facts*). The validity of the most of the objections set up could not be admitted in this court without overruling the cases of *Sherlock* v. *Stuart*, 96 Mich. 193 (21 L. R. A. 580), and *People* v. *Blom*, 120 Mich. 45, and we are not inclined to overrule either of these cases. It is settled law that license fees may be imposed for regulation or for revenue, and that the grant of a license may be made by the State directly, or it may be made indirectly through one of the municipal corporations of the State. A municipal corporation has no inherent power to grant licenses or to exact license fees. It must derive all its authority from the State, and the power must come by direct grant and cannot be taken by implication. 2 Cooley on Taxation (3d Ed.), pp. 1133, 1138. The same author says further:

"The terms in which a municipality is empowered to grant licenses will be expected to indicate with sufficient precision whether the grant is conferred for the purposes of revenue, or whether, on the other hand, it is given for regulation merely. It is perhaps impossible to lay down any rule for the construction of such grants that shall be general and at the same time safe; but, as all delegated powers to tax are to be closely scanned and strictly construed, it would seem that, when a power to license is given, the intendment must be that regulation is the object, unless there is something in the language of the grant, or in the circumstances under which it is made, indicating with sufficient certainty that the raising of revenue by means thereof was contemplated."

After laying down the rule that if a revenue authority is conferred, the extent of the tax, when not limited by the grant itself, is left to the judgment and discretion of

the municipal government, subject to the implied limitation that it must not be so heavy as to be prohibitive, thereby defeating the purpose of the power; and after stating that, generally, a fee for a license should not exceed the necessary or probable expense of issuing the license and of inspecting and regulating the business which it covers, the same learned author proceeds as follows:

"But the limitation of the license fee to the necessary expenses will still leave a considerable field for the exercise of discretion, when the amount of the fee is to be determined. The fee, of course, must be prescribed in advance, and when it cannot be determined with any accuracy what the cost of regulation is to be. It must therefore be based upon the estimates, with more or less probability that the result will fail to come anything near a verification of the calculations. Moreover, in fixing upon the fee, it is proper and reasonable to take into account, not the expense merely of direct regulation, but all the incidental consequences that may be likely to subject the public to cost in consequence of the business licensed. In some cases the incidental consequences are much the most important, and, indeed, are what are principally had in view when the fee is decided upon. The regulation of the business of huckster, for instance, could seldom be troublesome or expensive, but that of the manufacture and sale of intoxicating drinks could not be measured by anything like the same standard. * * * It cannot be questioned, therefore, if it is to be licensed by the public authorities, that it is legitimate and proper to take into the account all the probable consequences, or that the payment to be exacted should be sufficient to cover all the incidental expenses to which the public are likely to be put by means of the business being carried on. And all reasonable intendments must favor the fairness and justice of a fee thus fixed. It will not be held excessive unless it is manifestly something more than a fee for regulation."

The power to license saloons in the city of Flint is expressly conferred by the charter. The exercise of that power by the passage and enforcement of the ordinance which is in question must be held to be for the purpose of regulation, and not revenue, and must be sustained so far

as the amount of the license fee is concerned. This disposes of the first, second, third, fifth, and eighth of the objections set out in the application for the writ of certiorari. I think the fourth, sixth, and seventh objections are answered by the terms of the ordinance itself. If they are not, it does not appear that George Webb, the person against whom it was sought to have the warrant issued, has ever made any application to the council for a license or paid or tendered the license fee. It will be time enough to consider some of the points which are argued when a case is made involving a capricious or arbitrary enforcement of the ordinance.

The duty of the magistrate to entertain the complaint and issue the warrant is clear, and the judgment of the court below is affirmed, with costs.

CARPENTER, C. J., and MCALVAY, HOOKER, and MOORE, JJ., concurred.