Ensley v. State, ex rel.—172 Ind. 198.

---

Ensley, Treasurer, et al. *v.* The State of Indiana, ex rel. Brown.

[No. 21,221. Filed April 22, 1909.]

1. CONSTITUTIONAL LAW.—*Intoxicating Liquors.—Power Over.—Delegation of.—Regulation of Licenses.*—The legislature may delegate its power to pass upon the fitness of applicants for liquor license to common councils or other inferior bodies, and such power may be discretionary. p. 203.

2. CONSTITUTIONAL LAW.—*Intoxicating Liquors.—Licenses.—Rules for Granting.*—Statutes providing for licensing the sale of intoxicating liquors must provide like rules and procedure for all applicants. p. 203.

3. STATUTES.—*In Pari Materia.—Construction.—Presumption.*—All laws upon a given subject should be construed together so

Ensley v. State, ex rel.—172 Ind. 198.

as to produce a harmonious system if possible, the presumption being that any new law enacted relating to such subject was enacted with reference to the former laws.  p. 203.

4. INTOXICATING LIQUORS.— Licenses.— Fitness of Applicants.— Statutes.—That part of the act of 1905 (Acts 1905, pp. 219, 246, §53, subd. 40, §8655 Burns 1908) giving city councils the right to regulate the sales of liquor and to prescribe the kinds of rooms, the arrangements thereof, and the localities where such liquor may be sold, does not take from the board of commissioners the exclusive right to judge of the fitness of applicants. pp. 203, 207.

5. INTOXICATING LIQUORS.— Licenses.—Regulations.—Cities.—Powers Over.—Under §8655 Burns 1908, Acts 1905, pp. 219, 246, §53, subd. 40, cities have the power, by general rules, to determine the places, environments, and conditions of the sale of intoxicating liquors.  p. 204.

6. MUNICIPAL CORPORATIONS.— Powers.— Implied.— Intoxicating Liquors.—Fitness of Applicants.—Municipal corporations have no implied power to determine the fitness of applicants for liquor license.  p. 205.

7. MUNICIPAL CORPORATIONS.—Ordinances.—Fitness of Applicants for Liquor License.—A city ordinance providing that licenses for the sale of intoxicating liquors shall be granted under certain conditions "upon said common council's being satisfied with the fitness of the applicant" is void.  pp. 205, 208.

8. MUNICIPAL CORPORATIONS.—Ordinances.—Conflict with State Law.—A municipal ordinance in conflict with the state law is void.  p. 206.

9. CONSTITUTIONAL LAW.— Statutes.— Reasonableness.— Where a valid statute has authorized a thing to be done, its reasonableness is not a question for the courts.  p. 208.

10. CONSTITUTIONAL LAW.—Police Power.—Delegation of.—Intoxicating Liquors.—The State may authorize a municipal corporation to regulate the sales of intoxicating liquors.  p. 208.

11. WORDS AND PHRASES.—"Restrain."—Intoxicating Liquors.— The word "restrain," as used in §8655 Burns 1908, Acts 1905, pp. 219, 246, §53, subd. 40, giving cities the power "to license, tax, regulate and restrain" the sale of intoxicating liquors therein, means to abridge, or confine, and not to prohibit.  p. 208.

12. MUNICIPAL CORPORATIONS.— Ordinances.— Invalid.— Repeal of Prior One.—The passage of a void ordinance purporting to repeal a prior valid one, does not repeal such prior ordinance.     p. 209.

From Superior Court of Marion County (74,275) ; *James M. Leathers,* Judge.

Action by The State of Indiana, on the relation of Peter

Brown, against Oliver P. Ensley, as Treasurer of Marion County and ex-officio Treasurer of the City of Indianapolis, and another. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*Crate D. Bowen* and *Charles E. Barrett,* for appellants. *Bernard Korbly,* for appellee.

MYERS, J.—Appellee's relator on August 22, 1907, filed in the office of the clerk of the Superior Court of Marion County his complaint against the treasurer and comptroller of the city of Indianapolis, for an alternative writ of mandate to compel said officers to issue to him a license to sell intoxicating liquors, claiming the right to have such license issued to him pursuant to the provisions of an ordinance of the city of Indianapolis, which provided that before license should issue to sell intoxicating liquors in, or within two miles of, that city, the applicant should pay $250 to the treasurer, who should issue a receipt therefor, and on presentation of the latter to the comptroller, together with the license issued by the board of commissioners, a license should issue.

On April 15, 1905, the general cities and towns law of this State went into effect. The fortieth subdivision of §8655 Burns 1908, Acts 1905, pp. 219, 246, §53, confers power upon common councils of cities "to license, tax, regulate and restrain all shops, inns, taverns or other places where intoxicating liquors are kept for sale, to be used in and upon the premises; and, in regulating, restraining and licensing such inns, taverns, shops or places aforesaid, such common council shall have the power to designate the room, building or structure where such liquors may be sold, and may exclude such sales from the suburban or residence part of such city, and confine the places where such sales may be made to the business part of such city, and may define such suburban or residence and business parts of any such city; and may direct the arrangement and construction of the doors, windows and

openings of the particular room in such building where such sales may be had, or such intoxicating liquors be drunk, and may direct the location, arrangement and construction of the bar kept therein, and the interior arrangement and construction of such room, and may direct what games may be carried on therein, and may forbid the keeping or use of wine-rooms.''

On July 1, 1907, the city of Indianapolis enacted an ordinance requiring a person who desires to sell intoxicating liquors to file an application with the comptroller, in which he shall state his name, residence, age, and his place of residence and occupation for the two years immediately preceding the making of such application, and shall, in such application, describe the premises wherein and whereon he desires to carry on such business, giving a particular description of the real estate, the building on said property, and the various entrances to such room, and shall state whether any other business is to be carried on in the same room or in connection with such business, and shall pay to the comptroller $1 as a fee for the filing of such application; and upon the filing of such application with the city comptroller, and payment of the fee for filing, the comptroller shall certify said application to the common council of said city; and upon said common council's being satisfied with the fitness of the applicant, and with the place where such intoxicating liquors are proposed to be sold, the council aforesaid shall by resolution approve such application, and thereafter such applicant shall pay to the city comptroller of the city of Indianapolis the sum of $250 as a license fee for one year; and the comptroller shall, on the making of such payment, issue a license to such applicant for the sale of intoxicating liquors on the premises described in the application, but until such application for license is approved by the common council of said city a license shall not issue.

Appellee's relator procured from the Board of Commis-

sioners of the County of Marion a license to sell intoxicating liquors in the city of Indianapolis for the period of one year from August 6, 1907, and on August 21 tendered the treasurer of the city the sum of $250, that being the amount required by the prior ordinance of the city for license to sell intoxicating liquors. The treasurer refused to receive the money, and refused to issue a receipt therefor, and relator then tendered the same sum to the comptroller, and presented to him the license issued by the board of commissioners, and demanded that a license issue to him. The money was refused and the license denied. Relator then brought this action to compel its issuance.

The treasurer and comptroller answered, setting up the ordinance of July 1, 1907, and showing that relator had not complied with the provisions of that ordinance. This ordinance is claimed by relator to be void, on the ground that it is repugnant to §23 of the Bill of Rights (Art. 1), as granting privileges or immunities to one citizen or class of citizens not equally open to all on the same terms, in that it commits to the common council the right to determine to whom it will issue license; that it requires a license fee of $251, when the limit under the statute is $250; that under §8655, supra, executive or administrative functions which are "required to be performed by any ordinance or resolution of the common council, * * * shall be performed by the proper executive department, and not by such council;" that the ordinance of July 1, 1907, being invalid, the ordinance of 1899 is in force; that the exclusive power to pass upon the fitness of applicants to sell intoxicating liquors is vested in boards of commissioners.

The ordinance is attacked on the ground that the granting of, or refusal to grant licenses is not governed by any prescribed rules, but rests upon the discretionary action of the council.

It cannot successfully be contended that it would not be within the power of the legislature to give common councils,

probate judges, excise boards, and the like, the right
1. to determine the fitness of persons to sell intoxicating liquors, and this may be a discretionary power. *State, ex rel.*, v. *Columbia* (1881), 17 S. C. 80; *Intoxicating Liquor Cases* (1881), 25 Kan. 751, 37 Am. Rep. 284; Black, Intox. Liq., §154.

But the power must be exercised under prescribed rules governing the cases of all applicants, so that all ap-
2. plicants so far as making the application and its hearing are concerned, may stand on the same rules and procedure.

Said section of the act of 1905 is not attacked, but the contention is that, under said section, the regulation must be under prescribed rules as to conditions, locality, etc., and that the question of fitness of the applicant is left wholly to boards of commissioners, and that the cities have nothing to do with the question.

It is an acknowledged canon of construction that all laws upon a subject, or germane to it, shall be construed together, so that all may be given effect and produce a har-
3. monious system, and that it will be presumed that the legislature in enacting a law did so with reference to existing laws. *Humphries* v. *Davis* (1885), 100 Ind. 274, 50 Am. Rep. 788; *Lutz* v. *City of Crawfordsville* (1887), 109 Ind. 466; Bishop, Written Laws, §242b.

Evidently the legislature in the enactment of the act of 1905, *supra*, had in mind the authority conferred by existing laws upon boards of commissioners, of determining
4. the fitness of applicants, and also the confusion which must inevitably follow, if two apparently coördinate jurisdictions were constituted to pass upon that question, when it is apparent that one jurisdiction might find one way, and the other, another way, depending upon the character of evidence offered, personal considerations, and many other elements; while to commit to one the exclusive right of determining that question would allow the harmonious work-

ing of all the statutes upon the subject. The general rule is that when the right of determining the fitness of the applicant is conferred upon one jurisdiction that one is exclusive, and for obvious reasons. *Cooke* v. *Court of Common Pleas* (1881), 51 N. J. L. 85, 16 Atl. 176; *Zinner* v. *Commonwealth* (1888), (Pa. St.), 14 Atl. 431; *Wiggins* v. *Varner* (1881), 67 Ga. 583; Black, Intox. Liq., 154.

The general subject of the regulation of the sale of intoxicating liquors, both by statute and ordinance, which, if legally enacted, have the force of laws, involves two

5. distinct branches: one the fitness of the applicant, and the other the places, conditions and environments of their sale, and we think that it is to this latter feature of the subject that the provision of the cities and towns act of 1905 was intended to apply, and thus give the laws that uniformity in application, and procedure under them, which is essential to any system of laws.

When a city has prescribed, as it may by a general rule, for the sale of intoxicating liquors, with respect to the location and construction of a building, and the arrangement of its interior, then when the fitness of the applicant is determined by the board of commissioners, that fitness is addressed to, and involves the entire subject of fitness, whether the sales are to be made in a populous, or a sparsely settled district; but there may be very different reasons for prescribing the place, the environments, the construction of buildings, and the arrangements of the interior, which would be exceedingly important in the populous district, and be relatively unimportant or wholly immaterial in another place, and the legislature has wisely committed to cities the power of regulation in their legislative sphere. The right of control and repression of forms of vice is thus committed to that body whose citizens they most concern, and who, by the same token, are in the better situation to deal with them, and to this end the act in question gives cities very extensive

Ensley *v.* State, ex rel.—172 Ind. 198.

powers of regulation, and quite sufficient for the interposition of the police power in its widest application.

But to say that boards of commissioners may pass upon the fitness of an applicant and deny a license, and the common council may determine the same question just the contrary, would lead to an anomalous condition, and was evidently never intended by the legislature; while, on the other hand, to mark the distinction which we have made leads to uniform procedure, harmonious action and results, and supplemental regulation.

Cities are public corporations of limited powers, and they are limited to the enumerated powers, and such as are implied by, or reasonably necessary in carrying out, their
6.  enumerated powers, and we think it cannot be said that the legislative act attempts to confer power upon common councils to pass upon the fitness or unfitness of applicants to sell intoxicating liquors, and certainly it cannot be claimed to be an implied power, when not only wholly unnecessary, but would really be subversive of an orderly, disciplined and effective regulation of the traffic.

The ordinance of July 1, 1907, is clearly subject to the objection that it furnishes no prescribed rule of procedure or fixed rule of determination, as to the question of
7.  fitness, which is so essential to the orderly determination of any question which is committed to any tribunal, however low in the scale, in which a right or power of determination is involved as to the rights or privileges of others.

The ordinance provides no standard of fitness or unfitness; no rule by which those charged by the ordinance with making the determination are to be guided, leaving the matter wholly to the individual opinion or arbitrary discretion of the members of councils, and thus, in effect, leaves the matter to as many constructions as there might be varying opinions on the subject held by the members of the same council, or in

councils as differently constituted in their personnel, at different times, so that the question might resolve itself into one, not of licensing or regulating, but of denying license, and therefore a matter of arbitrary discretion, as to individual applicants. The law is not to be thus the subject of uncertainty in its application or uniformity of operation.

It is not alone the fact that discrimination may arise, but it is the power of discrimination, which destroys its uniformity, and the rule is of universal application, that ordinances of municipal corporations must be consistent with public legislative policy, and that all laws will be construed so as to give them uniformity. 1 Dillon, Mun. Corp. (4th ed.), §329.

The proposition is well stated in *Ex parte Theisen* (1892), 30 Fla. 529 (which we approve), as follows: "The grant to municipal corporations to regulate and restrain, will not permit the enactment of an ordinance under which arbitrary discrimination may be made in respect to matters which are exclusively under statutory control and regulation. In the absence of an express declaration of intention to that effect, it must not be assumed that the legislature proposed by the grant of power to municipal corporations to regulate and restrain retail liquor dealing, to confer upon them the power to contravene and defeat state policy by ordinances inconsistent with the laws of the state on the subject. The personal fitness of an applicant to retail in any place, whether within the limits of a municipal corporation or in the interior of a county, is regulated by state law, and we think that municipal authorities have no right to arbitrarily discriminate between individuals to any extent, based solely on account of personal fitness. It is evident that the ordinance in question permits of such discrimination, and for that reason we think it is void"—citing numerous instructive cases, to which we add *State* v. *Strauss* (1878), 49 Md. 288; *State* v. *Baum* (1881), 33 La. Ann. 981; *State* v. *Kantler.* (1885), 33 Minn. 69, 21 N. W. 856; *State* v. *Du-*

*barry* (1892), 44 La. Ann. 1117, 11 South. 718; *Robinson* v. *Miner* (1888), 68 Mich. 549, 37 N. W. 21.

The cases cited by appellants to support the ordinance are not found to do so. The leading ones are: *Gundling* v. *Chicago* (1900), 177 U. S. 183, 20 Sup. Ct. 633, 44 L. Ed. 725; *Wells* v. *Torrey* (1906), 144 Mich. 689, 108 N. W. 423; *Commonwealth* v. *Moran* (1889), 148 Mass. 453, 19 N. E. 554. In these three cases there was express authority conferred upon common councils to grant or revoke licenses. They were based upon the ground that where the question of fitness or unfitness is referred to a mayor, board of aldermen or a common council, such action calls for the exercise of discretion of a judicial nature.

In *Gundling* v. *Chicago, supra,* it is said: "The mayor is bound to grant a license to every person fulfilling these conditions [good character and reputation, and a reliable person to be intrusted with the sale of cigarettes], and thus the fact of fitness is submitted to the judgment of the officer, and it calls for the exercise of a discretion of a judicial nature." The same doctrine is applied in this State with respect to the powers and duties of boards of commissioners in granting liquor licenses. *State, ex rel.,* v. *Board, etc.* (1874), 45 Ind. 501, 505; *Bryan* v. *DeMoss* (1905), 34 Ind. App. 473.

If it can be said of the ordinance in question that it calls for the exercise of a discretion of a judicial nature, the other objection still obtains, that the question of fitness is committed to another tribunal.

It is not a question of denial of the right of licensing and regulation, but of the manner of doing so; and, if it be conceded that a purely discretionary power may be vested in some tribunal, we think the question of fitness or unfitness has been vested in boards of commissioners, and the authority vesting such power in them, and the authority of cities to license and regulate being alike

statutory, and of equal rank, and authority, they are to be taken together; and we are impelled to this view to avoid a conflict in the statutes. Upon the question of the enactment of ordinances, it is of course elementary that they must be reasonable, and not discriminative.

It is also true that, where the statute has expressly authorized a thing to be done, the question of its reasonableness is not a matter for the courts. *Cleveland, etc.,*

9. *R. Co.* v. *Harrington* (1892), 131 Ind. 426; *A Coal-Float* v. *City of Jeffersonville* (1887), 112 Ind. 15; 1 Dillon, Mun. Corp. (4th ed.), §308.

This power does not imply any diminution of the police power of the State; and what the State may do it may authorize municipal corporations to do, in the exercise

10. of this power. *Jordan* v. *City of Evansville* (1904), 163 Ind. 512, 67 L. R. A. 613, and cases cited.

It is evident that by the use of the words in the statute, "to license, tax, regulate and restrain," it was not intended that the word "restrain" should be understood to

11. prohibit, but it is used in its ordinary meaning, to abridge, confine, keep in, hold in, and the like. This must be so, for the State itself has not undertaken to prohibit or suppress the traffic. We do not mean to say that the State might not make such a classification as to provide for granting a license in one case, and refusing it in another, and might authorize cities to do so; but so far it has not done so. There can therefore be no authority inferred from the word "restrain" to authorize municipal corporations to be the judges as to when they will grant a license, and thus invest them with that discretion.

No rule is prescribed by the ordinance of July, 1907, under which all applicants on the same terms, and under the same conditions, may have the question of fitness deter-

7. mined. That matter is thus left to the discretion of the council in each particular case; and, while it may be a judicial discretion, there is no opportunity or provision

for review or appeal, leaving the question all the more arbitrary.

In *Bessonies* v. *City of Indianapolis* (1880), 71 Ind. 189, an ordinance prohibiting the maintenance of private hospitals without a license was held invalid as not being a proper exercise of the authority of cities "to erect and establish market-houses and market places, engine-houses, houses of refuge, pesthouses and hospitals." 1 R. S. 1876, p. 292.

In *Bills* v. *City of Goshen* (1889), 117 Ind. 221, 3 L. R. A. 261, an ordinance was held invalid because it conferred the power upon the mayor to determine the sum which should be paid as a license for any particularly enumerated amusement.

In *City of Richmond* v. *Dudley* (1891), 129 Ind. 112, 13 L. R. A. 587, 28 Am. St. 180, an ordinance was held invalid which authorized the common council to discriminate between citizens with respect to the storage of explosives in the city, and provided no terms or conditions with respect to keeping or storing them which would present a rule for the guidance of all citizens. The language of the ordinance reviewed in that case is quite similar in effect to that used in the ordinance before us. To the same effect are *City of Plymouth* v. *Schultheis* (1893), 135 Ind. 339, and *City of Elkhart* v. *Murray* (1905), 165 Ind. 304, 1 L. R. A. (N. S.) 940, 112 Am. St. 228. In the latter case it was said: "The ordinance must contain permanent legal provisions operating generally and impartially upon all within the territorial jurisdiction of such city, and no part thereof be left to the will, or unregulated discretion of the common council or any officer"—citing many cases.

The ordinance being invalid, the former ordinance was not repealed by it, and relator complied with that ordinance.

*Fessler* v. *Brayton* (1896), 145 Ind. 71, 32 L. R. A. 12. 578; *Carr* v. *State, ex rel.* (1891), 127 Ind. 204, 11 L. R. A. 370, 22 Am. St. 624; *State, ex rel.,* v. *Blend*

(1890), 121 Ind. 514, 16 Am. St. 411; 1 Dillon, Mun. Corp. (4th ed.), §314.

We think the court below did not err in sustaining the demurrers to the answers to the complaint and the alternative writ of mandate, and the judgment is affirmed.