PEOPLE v BUFF CORPORATION

(CITY OF WARREN v BUFF CORPORATION)

Docket No. 78-327. Submitted December 11, 1978, at Lansing.—Decided December 6, 1979.

Buff Corporation owns and operates a class "C" liquor licensed establishment which contains seven pinball machines. Application for a license to operate the machines under the City of Warren Code or ordinance was filed with the city clerk. The city clerk refused to issue the license because Buff Corporation failed to comply with various sections of the Warren Code or ordinance dealing with amusement and vending machines. Buff challenged the constitutionality of these sections of the code. The district court held that certain sections of the code which govern the issuance of an "arcade" license conflict with the Michigan Liquor Control Act and are therefore void and unenforceable and that § 3-503(6)(e) which gives the city clerk authority to disprove an application if the applicant operates an arcade hall in a manner generally reputed in the immediate vicinity to be immoral and a menace to the good citizenship of the community as evidenced by petitions of the affected community is invalid because it attempts to vest the city clerk with arbitrary power to disapprove a license application. Macomb Circuit Court, Edward J. Gallagher, J., affirmed the trial court's opinion concerning the conflict with the Michigan Liquor Control Act and held further that § 3-503(6)(e) was void for vagueness. Plaintiff appeals. *Held:*

1. A statute provides that the Michigan liquor control commission shall not prohibit liquor licensees from allowing pinball machines on the premises for the purpose of amusement. A city cannot defeat this legislative intention by arbitrarily enacting ordinances which have the operational consequences of prohibiting pinball machines on the premises for purposes of amuse-

REFERENCES FOR POINTS IN HEADNOTES

[1] 56 Am Jur 2d, Municipal Corporations, Counties, and other Political Subdivisions §§ 374, 375.

[2] 56 Am Jur 2d, Municipal Corporations, Counties, and other Political Subdivisions § 367.

16A Am Jur 2d, Constitutional Law § 818.

ment. A city may enact legislation designed to complement or supplement the statute by providing for licensing and registration of pinball machines, but it cannot under the guise of licensing arbitrarily prohibit the placing of these machines in liquor establishments.

2. Section 3-503(6)(e) fails to meet the requirements of due process. The nebulous terminology "immoral and a menace to the good citizenship of the community" is vague and standardless leaving the public uncertain as to the conduct prohibited, or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case. In the absence of due process safeguards a city clerk has unfettered discretion in the approval or disapproval of pinball license applications. The ordinance provision does not set forth a standard of conduct which is reviewable. It is invalid.

Affirmed.

1. MUNICIPAL CORPORATIONS — ORDINANCES — LIQUOR LICENSES — PINBALL MACHINES — ARBITRARY PROHIBITION — STATUTES.

A statute provides that the Michigan liquor control commission shall not prohibit liquor licensees from allowing pinball machines on the premises for the purpose of amusement; therefore a city cannot defeat this legislative intention by arbitrarily enacting ordinances which have the operational consequences of prohibiting pinball machines on the premises for purposes of amusement; a city may enact legislation designed to complement or supplement the statute by providing for licensing and registration of pinball machines, but it cannot under the guise of licensing arbitrarily prohibit the placing of these machines in liquor establishments (MCL 436.28a; MSA 18.999[1]).

2. CONSTITUTIONAL LAW — STATUTES — VAGUE AND STANDARDLESS — DUE PROCESS CLAUSE.

A law fails to meet the requirements of the due process clause if it is so vague and standardless that it leaves the public uncertain as to the conduct that it prohibits, or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case.

*W. Thomas Marrocco, Jr.,* Warren City Attorney, and *Walter A. Jakubowski, Jr.,* Assistant City Attorney, for plaintiff.

*Perica, Breithart, Gallagher, Viviano, Graham, Nitz & Carmody, P.C.,* for defendant.

Before: R. B. BURNS, P.J., and J. H. GILLIS and V. J. BRENNAN, JJ.

V. J. BRENNAN, J. Defendant owns and operates a class "C" liquor licensed establishment known as the Electric Saloon which contains, among other amusement devices, seven pinball machines. Defendant applied to the city clerk for a license to operate the devices, as required under the terms of the Warren Code or ordinance. The city clerk disallowed issuance because defendant fialed to comply with § 3-502 which requires those who maintain or distribute mechanical games for purposes of operation to secure an "arcade license". Subsequently, defendant was cited under a three-count criminal complaint for violation of §§ 3-502(2), failure to obtain an establishment license, 3-502(1)(a), failure to display said license, and 3-505(6), operating the establishment without a bonded security guard. According to the stipulated facts, defendant moved to set aside various sections of the Warren Code dealing with amusement and vending machines as being unconstitutional. The trial court held that § 3-503(7)(8)(9), § 3-504 and § 3-505(6), which govern the issuance of an arcade license, conflict with § 28a of the Michigan Liquor Control Act, MCL 436.28(a); MSA 18.999(1), and are therefore void and unenforceable. The trial court also held that § 3-503(6)(e) is invalid because it attempts to vest the city clerk with arbitrary power to disapprove a license application. The circuit court for the County of Macomb incorporated the trial court's opinion concerning the conflict with § 28a and affirmed the result

therein. The circuit court also held that § 3-503(6)(e) was void for vagueness.

Plaintiff appeals by leave granted.

We first address the question of conflict between the city ordinance and the Michigan Liquor Control Act. Section 4i of the Home Rule Cities Act, MCL 117.4i; MSA 5.2082, sets forth in pertinent part that each city may in its charter provide:

"For the regulation of trades, occupations and amusements within its boundaries, not inconsistent with state and federal laws, and for the prohibition of such trades, occupations and amusements as are detrimental to the health, morals or welfare of its inhabitants."

The City of Warren conferred the regulatory powers prusuant to this statute on its city council. The council enacted the subject ordinance to regulate mechanical games. The ordinance defines "arcade hall" as an establishment with five or more mechanical games (pinball machines are included in the definition of mechanical games). Section 3-502(1) provides that it is unlawful for an owner to allow the maintenance, for the purpose of operation, of any mechanical game without first procuring a license for the device. Section 3-502(1)(a) imposes a duty upon the owner to post the mechanical game license near the machine. Section 3-502(2) provides that it is unlawful for an owner to maintain any mechanical game without first obtaining a license for the establishment where the device is being maintained. Section 3-503(6)(e) provides that the city clerk has authority to disapprove an application for a license if the applicant operates an arcade hall "in a manner generally reputed in the immediate vicinity to be immoral and a menace to the good citizenship of the community, as evidenced by petitions of the affected

community". Section 3-503(7) provides that if an application for a license is disapproved, an owner may not reapply for nine months. Section 3-503(8) provides that the city clerk shall require a licensee to furnish proof of liability insurance in an amount not less than $500,000 for bodily injury to or the death of a patron of the arcade hall. Section 3-503(a) provides for the acquisition of a continuous surety bond in an amount of not less than $5,000 to assure full compliance with the ordinance. Section 3-504 requires an owner to pay a license fee of $30 plus $8 for each mechanical game. Section 3-505(6) provides that it is unlawful for an arcade owner to operate without having a bonded security guard on the premises between 8 p.m. and 2 a.m.

As noted above, the district court adjudged §§ 3-503(7), (8), (9), 3-504, 3-505(6) to be void and unenforceable in that they defeat the legislative intent expressed by the state Legislature in § 28a of the Michigan Liquor Control Act.

Const 1963, art 4, § 40 provides:

"The legislature may by law establish a liquor control commission which, subject to statutory limitations, shall exercise complete control of the alcoholic beverage traffic within this state, including the retail sales thereof. The legislature may provide for an excise tax on such sales. Neither the legislature nor the commission may authorize the manufacture or sale of alcoholic beverages in any county in which a majority of the electors voting thereon shall prohibit the same."

MCL 436.1; MSA 18.971 provides in pertinent part:

"Except as by this act otherwise provided, the commission shall have the sole right, power and duty to control the alcoholic beverage traffic and traffic in other alcoholic liquor within the state of Michigan, including

the manufacture, importation, possession, transportation and sale thereof."

MCL 436.28a; MSA 18.999(1) provides:

"The commission shall not prohibit licensees from allowing pinball machines on the premises for the purpose of amusement."

The trial court ruled that since the commission has complete control over the alcoholic beverage traffic in the state, and since the commission cannot prohibit pinball machines from licensees' premises, the city cannot arbitrarily enact ordinances which have the "operational consequences" of prohibiting liquor licensees from "allowing pinball machines on the premises for purposes of amusement". The trial court ruled that the city may enact legislation designed to complement or supplement § 28a *i.e.,* provide for licensing and registration of pinball machines, but the city cannot under the guise of licensing arbitrarily prohibit the placing of these machines in liquor establishments.

The trial court then found as a matter of fact that the ordinance sections set forth above comprise an arbitrary economic prohibition to the placing of pinball machines. In the words of the trial court:

"Even if this Court were to assume the existence of insurance companies willing to underwrite the required $500,000 liability policy, it would require little insight into the harsh realities of the economic world of the pinball machine enterprise to arrive at the conclusion that the cost for such a policy, in conjunction with costs for a licensed security guard and a $5,000 surety bond, dwarf even the most optimistic expectations of monetary yield from 'five or more mechanical games * * *'.

Although the break-even point might be reached by installation of the 10 amusement devices employed by Defendant, the prohibitive impact of § 3-503(8), (9), 3-505(6), is not thereby lessened. Indeed, one need not engage in the esoteric activity of inquiring into the motives of the City Council in adopting the relevant provisions, *People v Gardner,* 143 Mich 104 (1906), to arrive at the reasonable inference that they were precisely intended to accomplish this purpose. This inference is strengthened by virtue of comparing § 3-504 with § 3-125(12), the former imposing fees eight times as high as the latter for the identical subject matter—such fees do not appear reasonably related to associated expenses incurred by the City, See, *Wells v Torrey,* 144 Mich 689 (1906) but rather are prohibitive in character. And the inference becomes even more strengthened when § 3-503(7), requiring a 9-month delay in reapplying for an establishment license subsequent to an initial rejection, is added."

The city devotes much of its brief on appeal to the propriety of the trial court's ruling that § 28a operates to prohibit the city from "invasion" of the field. Although the trial court did make such a statement, the type of invasion contemplated is defined as an arbitrary prohibition. A ruling that § 28a preempts the field would have been erroneous pursuant to the standards for preemption set forth in *People v Llewellyn,* 401 Mich 314; 257 NW2d 902 (1977).

The trial court did not base its decision on preemption but rather on the economic prohibition fostered by the ordinance. We agree.

We next address the trial court's ruling that § 3-503(6)(e) is void for vagueness. As set forth above the section gives the city clerk the authority to disapprove the license application if the arcade hall is operated "in a manner generally reputed in the immediate vicinity to be immoral and a menace to the good citizenship of the community, as

evidenced by petitions of the affected community". In *Giaccio v Pennsylvania,* 382 US 399; 86 S Ct 518; 15 L Ed 2d 447 (1966), it was held that a law fails to meet the requirements of the due process clause if it is so vague and standardless that it leaves the public uncertain as to the conduct that it prohibits, or leaves the judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case. The use of the nebulous terminology "immoral and a menace to the good citizenship of the community" falls within the *Giaccio* prohibition and places unfettered discretion in the hands of the city clerk. *Papachristou v City of Jacksonville,* 405 US 156, 162; 92 S Ct 839; 31 L Ed 2d 110 (1972). Here the ordinance provision in question does not set forth a standard of conduct which is reviewable. While we recognize the interest the city is attempting to protect, that end can be more narrowly protected by specifically delineating the conduct proscribed. We do not find the lower court's ruling in this regard improper.

Affirmed.