CÁNDIDO HERNÁNDEZ, demandante y apelado, *v.* COMISIÓN HÍPICA INSULAR DE PUERTO RICO, ETC.; JURADO DEL HIPÓDROMO QUINTANA, ETC., y JURADO DEL HIPÓDROMO LAS MONJAS, ETC., demandados y apelante la primera.

Núm. 6655.—*Sometido:* Noviembre 26, 1935. *Resuelto:* Mayo 29, 1936.

*Diego O. Marrero,* abogado de la apelante; *J. Valldejuli Rodríguez,* abogado del apelado.

Eι Juez Asociado Señor Wolf, emitió la opinión del tribunal.

El jurado del Hipódromo Quintana sospechó que Cándido Hernández, un *jockey,* había corrido dos carreras irregularmente. Se le absolvió definitivamente de tal cosa en una de las carreras. El jurado se reunió y deliberó sobre el otro caso, le halló culpable de irregularidades y le suspendió de ulteriores servicios como *jockey* por espacio de ocho semanas. Él radicó un pleito de *injunction* ante la Corte de Distrito de San Juan alegando que no había sido debidamente notificado de ninguna sesión del jurado y de que no se le había dado oportunidad para defenderse. Luego de un juicio la Corte de Distrito de San Juan libró un auto de *injunction* dirigido a los jurados de ambos hipódromos ordenándoles, en efecto, que se abstuvieran de inpedirle que corriera como *jockey.* El pleito fué dirigido contra la Comisión Hípica y contra los miembros del jurado de ambos hipódromos.

Entre los varios errores señalados se alegó que el jurado en realidad notificó a Cándido Hernández y le dió la oportunidad de defenderse. Uno de los testigos dijo en la corte que en estos asuntos el jurado tiene que actuar rápidamente entre carreras. Mas el jurado no actuó rápidamente en el presente caso. Celebró una sesión, y oyó a varios testigos sin estar presente Cándido Hernández o sin que se le notificara. Después de oír a estos testigos y posiblemente antes de examinar a un señor de apellido Alicea, se mandó a buscar a Cándido Hernández. Aparentemente después de haberse terminado con el examen de Alicea, suponiendo que éste hubiese sido interrogado en presencia de Hernández, el Presidente del Jurado hizo a Hernández una pregunta específica respecto a por qué le había cruzado por dentro a otro caballo de cierto modo y después que Cándido

Hernández había explicado o tratado de explicar, dicho presidente, sin consultar más con sus asociados, le dijo a Hernández que quedaba suspendido por ocho semanas. Se hace evidente inmediatamente que antes de examinarle o de darle una oportunidad para explicar, el jurado ya tenía criterio formado. Los autos no revelan que Cándido Hernández tuviera otra oportunidad de defenderse o de ser oído.

La ley que regía el hipismo en Puerto Rico en la época en que ocurrió este caso, lo era la núm. 11 de 1932 (pág. 195), que autorizaba a la Comisión Hípica Insular a formular ciertas reglas y a delegar poder para actuar a un jurado designado por la Comisión para la supervisión directa de las carreras. Al amparo de la facultad concedídale por esta ley, la Comisión Hípica formuló la regla 96 para los jurados, el inciso (h) de la cual lee así:

"(h) Antes de imponer castigo alguno, deberá practicar, hasta donde sea posible, una investigación de los hechos denunciados, tomando todas las declaraciones bajo juramento y dando la oportudad al querellado de ser oído en su defensa."

Convenimos en que no fué la intención de los redactores de dicho inciso que se observaran todas las solemnidades de un juicio. El jurado de un hipódromo no está en condicio- nes de celebrar un juicio completo. Estamos muy convencidos de que se exigían muchas menos formalidades. Creemos que bastaría que los testigos y el acusado fuesen citados, juramentados y examinados de manera informal y que se le diera al *jockey* la oportunidad de llamar a otros testigos, quizá a algunos de los otros *jockeys* que tomaron parte en la carrera. Sea esto como fuere, al demandante apelado no se le dió oportunidad para defenderse. Lo que le sucedió a Hernández fué algo más parecido a lo que ocurre a la terminación de ciertos juicios criminales, cuando la corte le pregunta al acusado si tiene alguna razón que alegar para que no se dicte sentencia. Si procede un *injunction* por dejar de cumplir con las disposiciones de la regla 96 *supra,* éste es un caso que claramente cae bajo la misma.

██ La apelante hace varios señalamientos de error, todos al efecto de que no procede un *injunction*. Una de las razones fué que el verdadero remedio lo era una acción de daños y perjuicios. Considerando el daño que se le hace a la reputación del *jockey* y la demora en un juicio de daños y perjuicios, y por otras razones, tal pleito evidentemente es inadecuado. Además, sería difícil saber cómo entablar semejante pleito y contra qué personas.

Creemos que el derecho o los derechos que asisten al apelado son extraordinarios. No se le da remedio específico ni bajo la ley ni bajo el reglamento. En realidad, en casos de esta índole, el estatuto prohibe una apelación ante la Comisión Hípica o ante las cortes. Por tanto, creemos que las disposiciones del artículo 677 del Código de Enjuiciamiento Civil (edición de 1933) que lee como sigue, son aplicables:

"Artículo 677. Puede concederse un *injunction* en los siguientes casos:

"1. . . . . . . . . .

"2. Cuando de la petición o declaración jurada resultare que la comisión o continuación de algún acto, durante el litigio, habrá de causar pérdidas o daños de consideración o irreparables a alguna de las partes.

"3. . . . . . . . . .

"4. Cuando una compensación pecuniaria no habría de proporcionar adecuado remedio. .

"5. Cuando fuere sumamente difícil precisar la cuantía de la compensación que habría de proporcionar remedio adecuado.

"6. . . . . . . . . .

"7. . . . . . . . . ."

El apelado no presentó alegato sobre esta cuestión, pero radicó una moción para desestimar. La moción se basa en gran parte en el hecho de que el recurso es académico, toda vez que la cuestión suscitada no podía suceder nuevamente debido a ciertas reformas recientes en la ley. No vemos que el presente recurso sea académico, mas no es necesario que

prestemos al asunto gran consideración ya que hemos decidido el mismo en favor del apelado.

*Debe confirmarse la sentencia apelada.*

Los Jueces Asociados Señores Córdova Dávila y Travieso no intervinieron.