DIOSDADO ROMANY, demandante y apelado, *v.* EL JURADO DEL HIPÓDROMO QUINTANA, ETC., y LA COMISIÓN HÍPICA INSULAR, ETC., demandados y apelantes.

Núm. 7595.—*Sometido:* Mayo 4, 1939. *Resuelto:* Julio 19, 1939.

*Diego O. Marrero,* abogado de los apelantes; *J. Valldejuli Rodríguez,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Diosdado Romany, dueño de ejemplares de carreras que corren en los hipódromos de Puerto Rico, demandó al Jurado del Hipódromo Quintana y a la Comisión Hípica Insular en solicitud de una orden de *injunction* dirigida contra las personas que los forman para que se abstuvieran de hacer efectiva cierta multa y de impedir al demandante que inscribiera y corriera en las fiestas hípicas de la Isla los ejemplares que posee y que están inscritos de acuerdo con la ley.

Dictó la corte una orden de entredicho y los demandados pidieron que fuera disuelta, archivando además un escrito de excepciones previas. La corte por resolución de julio 22, 1937, declaró sin lugar las excepciones y no sólo se negó a disolver la orden de entredicho si que ordenó la expedición de un auto de *injunction* preliminar de conformidad con la solicitud del demandante. No conformes los demandados, apelaron para ante este tribunal. Dos errores señalan en su alegato, a saber: 1, que la corte erró al sostener que tenía jurisdicción para conocer del asunto, y 2, que erró también

al declarar que la demanda aduce hechos suficientes para determinar una causa de acción.

Los hechos y razones en que el demandado basó su solicitud, se exponen en ella como sigue:

"*Segundo:* Que el demandante es dueño, entre otros ejemplares, del caballo JULIO CÉSAR, el cual estaba inscrito para tomar parte en las carreras de caballos que habían de efectuarse y se efectuaron en el Hipódromo Quintana con fecha 16 de abril de 1937, comenzando a las tres y media de la tarde.

"*Tercero:* Que el dicho ejemplar fué enviado al *paddock*, a la hora reglamentaria, y a pesar de ese hecho, y de haber tomado parte en la carrera para la cual estaba designado, que era la número 5, de las que se iban a celebrar según el programa oficial, el citado jurado le impuso una multa de cinco dólares, por la supuesta alegación de que el citado ejemplar había llegado al *paddock* fuera de la hora oficial.

"*Cuarto:* Alega el peticionario que dicho castigo o multa impuesta, de cinco dólares al mencionado ejemplar, y como consecuencia, al compareciente, es injusta, impertinente e ilegal, por las razones siguientes:

"(*a*) Porque en ningún momento se notificó al compareciente de imputación ni querella alguna, de que el mencionado ejemplar llegara fuera de la hora oficial al *paddock;*

"(*b*) Porque no se le dió oportunidad al compareciente de defenderse y ser oído, antes de que se impusiera la mencionada sentencia;

"(*c*) Porque el mencionado ejemplar llegó a hora al citado *paddock*, y tomó regularmente y a tiempo, parte en la carrera para la cual estaba designado;

"(*d*) Porque la imposición de dicha multa constituye la toma de la propiedad del compareciente sin el debido proceso de ley;

"(*e*) Porque la actuación del Jurado es contraria a las leyes y reglamentos que rigen el deporte hípico en Puerto Rico y contraria a la Constitución de Puerto Rico y a las leyes de la Isla.

"*Quinto:* Alega el compareciente que el mencionado jurado así como también la Comisión Hípica, aquí demandada, se propone cobrar al demandante, la mencionada multa, y en caso de que éste no la satisfaga, amenazan al compareciente con suspenderle todos los caballos de su establo si no hace efectiva la mencionada multa, no permitiéndole, con motivo de la suspensión de su ejemplar que ahora amenaza, que tome parte en las carreras o fiestas hípicas en los hipódromos de Puerto Rico, y eso traería como consecuencia daños

irreparables al compareciente, que no podrán ser compensados pecuniariamente y no tendría ningún remedio el compareciente para evitar los mencionados pleitos.

"*Sexto:* Que el compareciente carece de todo remedio claro, expedito en las leyes para hacer valer sus derechos y solamente tiene el recurso de *injunction* que ahora ejercita, para evitar que los demandados realicen su propósito y perjudiquen al demandante en la forma que se ha expresado en esta solicitud, y le obliguen a una multiplicidad de pleitos."

Y los motivos que los demandados tuvieron para sostener que la corte no tenía jurisdicción para actuar y que la solicitud no contenía hechos suficientes que justificaran la expedición del auto de *injunction* solicitado, fueron:

"(*a*) Porque de acuerdo con lo que dispone el artículo 18 de la Ley Hípica vigente, tal y como quedó enmendado por la Ley número 17, aprobada en 15 de julio de 1935, esta Corte carece de jurisdicción para conocer y resolver en un recurso extraordinario como el de *injunction* sobre la decisión del Jurado y de la Comisión Hípica Insular, . . .

"(*b*) Porque la Ley Núm. 17, aprobada el 15 de julio de 1935, solamente da intervención a las Cortes de Distrito en aquel caso en que se trate de la cancelación de una licencia de un hipódromo, por la Comisión Hípica Insular, . . .

"(*c*) Porque, examinando la legislación hípica que se ha llevado a cabo en Puerto Rico, aparece que por la ley número 21 de 1925, artículo 21 de dicha ley (véase Leyes de 1925, página 155), se concedió el recurso de *injunction* para suspender la ejecución de cualquier orden, acuerdo o resolución de la Comisión Hípica Insular, de sus funcionarios o empleados que lesionare derechos garantizados por la Constitución o por las leyes de P. R.; pero al aprobarse más tarde las leyes números 40 y 11 del 1927 y de 1932 respectivamente, el recurso de *injunction* que se concedía en la ley número 21 de 1925, fué eliminado; y al aprobarse la Ley número 17 de 1935 específicamente se prohibió al tribunal conceder recurso ordinario o extraordinario . . . demostrándose así el propósito de la Legislatura, de que los tribunales de justicia no intervengan por medio de este recurso en casos como el que se plantea en esta acción . . .

"(*d*) Porque, en esta jurisdicción, aun cuando en la consideración sobre la concesion de *injunction* se haya aplicado y se aplique la jurisprudencia que rige el mismo como remedio de equidad, es lo

cierto que el recurso es estatutario, por lo que, para concederse, es preciso que aparezca de las alegaciones de la petición, que la Corte tiene jurisdicción para conceder el remedio, . . .

"(e) Porque de acuerdo con las alegaciones de la petición de *injunction,* no se exponen las relaciones contractuales en las cuales exista una mutualidad de obligaciones entre las partes, cuyo cumplimiento se pueda exigir específicamente, sino que por el contrario, se alega un derecho unilateral . . . *San Juan Racing & Sporting Club* v. *Foote, Juez de Distrito,* 31 D.P.R. 161, . . .

"(f) Porque en este pleito lo que pretende el demandante es que los Tribunales revisen las actuaciones del Jurado del Hipódromo Quintana, a fin de determinar si las mismas han sido legales o no, cuando la decisión de dicho Jurado es inapelable para ante la Comisión Hípica, siendo inapelable a la vez para ante la Corte de Distrito, y el *injunction* no es un remedio para revisar errores de procedimiento.

"(g) Porque de acuerdo con el inciso 3 de la sección 4 de la Ley de *Injunction,* aprobada el 8 de marzo de 1906, no se puede otorgar un *injunction* para impedir el cumplimiento de un estatuto público, por funcionarios del público y en beneficio del público; . . .

"(h) Porque, de acuerdo con la jurisprudencia, no procede la concesión de un *injunction* cuando los derechos del peticionario no solamente son dudosos, sino que de los hechos expuestos en la petición aparece que el peticionario y no el demandado es el infractor de algún precepto legal; . . .

"(i) Porque es doctrina bien conocida en la jurisprudencia la que establece el principio de que no se debe conceder un *injunction* para impedir que se aplique un castigo por funcionarios con poder para ello, en cumplimiento del estatuto en virtud del cual actúan tales funcionarios; . . .

"(j) Porque también es doctrina bien conocida en la jurisprudencia la que sostiene que no debe concederse un *injunction* cuando la concesión del mismo pudiera resultar en ayuda para la perpetración de actos ilegales por parte del peticionario y la concesión del *injunction* en este caso podría resultar en tal ayuda, . . .

"(k) Porque de las propias alegaciones del demandante aparece que el castigo de que se trata, de ponerse en vigor, no acarrearía daño irreparable al demandante, sino que por el contrario es susceptible de compensación pecuniaria, . . ."

Los fundamentos de la resolución recurrida constan en la misma como sigue:

"1.—De sostener los puntos de vista de los demandados, tendríamos que declarar, si no toda, parte de la Ley Hípica nula en cuanto no concede un remedio para revisar actuaciones del Jurado que pudieran ser dictadas sin autoridad de ley o sin oportunidad de audiencia cuando se trata de sanciones punitorias.

"2.—La demanda expone motivos o razones de pedir suficientes, a nuestro juicio, para ameritar la intervención judicial.

"3.—La equidad puede y debe extender su brazo cuando se trata de situaciones como la expuesta en la petición. Para los fines de una excepción previa, es sabido que los hechos de la petición se consideran como ciertos, más si como en .el presente caso la petición está debidamente jurada.

"4.—La circunstancia de que se trata de una multa de $5.00 y tal cosa no constituye, según se alega, un daño irreparable, no empece para la concesión del remedio. La ley y la equidad. no actúan sobre sumas de dinero, s'no sobre personas que se amparen en principios de justicia y de derecho. Si pudiera establecerse el principio de que el Jurado de un hipódromo puede actuar en modo arbitrario y caprichoso de imponer multas, que en este caso es de $5.00, pero que en otro caso pudiera ser de mayor cuantía, y por el no pago de dicha multa impedir que el peticionario pueda correr sus caballos y suspenderlo así en el ejercicio de su negocio, sería contrario al más elemental principio de justicia, ya que es conocido el aforismo que donde existe la violación de un derecho debe haber un remedio para· corregir tal violación."

Hemos estudiado cuidadosamente el alegato de los apelantes y no nos convence de que la corte actuara sin jurisdicción y de que la demanda no aduce hechos suficientes para la expedición de un auto de *injunction* preliminar.

Es cierto que la ley sobre la materia que .tantas veces invocan los apelantes prescribe que las decisiones del jurado serán firmes e inapelables, excepto en los casos en que su · decisión imponga un correctivo mayor de tres meses de suspensión o cien dólares de multa en los cuales podrá apelarse para ante la Comisión Hípica Insular y que también prescribe que el fallo de la Comisión será definitivo e inapelable, con determinada salvedad que no es la de este caso, y luego ordena que contra el mismo los jueces y tribunales no admi-

tirán demanda ni recurso judicial alguno ordinario ni extraordinario. Ley Núm. 17 de 1935, (2) págs. 93 y 99.

En primer lugar interpretada literalmente la ley encontramos que la última prohibición se refiere al fallo de la Comisión, no a un caso como éste en que se trata de una decisión del jurado "firme e inapelable".

Y en segundo lugar aquí se alegó y se admitió a los fines de la excepción previa que la multa se impuso en violación del precepto reglamentario que ordena al jurado que "Antes de imponer castigo alguno deberá practicar, hasta donde sea posible, una investigación de los hechos denunciados, tomando todas las declaraciones bajo juramento y dando la oportunidad al querellado de ser oído en su defensa." Regla 96, inciso (h) del Reglamento formulado de acuerdo con la ley por la Comisión.

De ahí que esta corte, vigente ya la ley tal como quedó enmendada en 1935, ante una situación semejante resolviera, en el caso de *Hernández* v. *Comisión Hípica*, 50 D.P.R. 100, copiando del resumen, lo que sigue:

"El derecho o los derechos que asisten a un *jockey* castigado sin dársele la oportunidad de defenderse, son extraordinarios; y no dando remedio alguno específico la Ley Hípica ni el reglamento de la Comisión y prohibiendo además dicha ley una apelación ante dicha Comisión o ante las cortes, un *injunction* para que no se le impida correr como tal *jockey* procede bajo el artículo 677, incisos 2, 4 y 5 del Código de Enjuiciamiento Civil (ed. 1933)."

Resuelta la cuestión de jurisdicción suscitada, veamos si los hechos alegados son suficientes para sostener la expedición del auto de *injunction* preliminar.

Lo son, a nuestro juicio, porque de ellos surge que el jurado actuó fuera del precepto reglamentario indicado.

Pudo la Legislatura ordenar como ordenó que el fallo del jurado no fuera apelable, dándole así carácter definitivo y final a su resolución. Ello está en armonía con la naturaleza de las cuestiones a resolver y de las relaciones envueltas, pero no pudo autorizar como no autorizó al jurado a actuar

arbitrariamente, sin ajustarse a la ley de su creación y a las reglas adoptadas de acuerdo con la misma, porque ello sería destruir los principios de un verdadero gobierno de ley como es el nuestro.

Bastaríale al jurado alegar y probar si a ello fuese llamado y si es ésa la verdad de lo ocurrido, que juzgó el caso del peticionario aplicando la ley y el reglamento, para que la corte nada más investigara y declarara la petición sin lugar con imposición de las costas y honorarios al que sin razón reclamó su auxilio. Pero esa alegación y esa prueba son necesarias una vez que se formula ante una corte de justicia una demanda como la que aquí se formuló para que el principio constitucional invocado quede en pie.

"No se pondrá en vigor en Puerto Rico ninguna ley que privare a una persona de la vida, libertad o propiedad sin el debido procedimiento de ley, o que negare a una persona de dicha isla la protección igual de las leyes", comienza declarando el artículo 2 de nuestra Ley Orgánica, y son las cortes de justicia las llamadas a velar porque esa declaración sea en la práctica una realidad.

*Procede en tal virtud la confirmación de la resolución apelada.*

El Juez Asociado Sr. Travieso no intervino.