RAÚL MALDONADO RODRÍGUEZ, demandante y apelado, *v.* COMISIÓN HÍPICA INSULAR DE PUERTO RICO, ETC., demandados y apelantes.

Núm. 9006.—*Sometido:* Noviembre 9, 1944. *Resuelto:* Febrero 2, 1945.

504

*Diego O. Marrero,* abogado de los apelantes; *Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados del apelado.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

Raúl Maldonado Rodríguez fué suspendido por el Jurado de los Hipódromos de Puerto Rico como *jockey* durante tres meses por alegada negligencia en la forma en que corrió un caballo en la primera carrera de las celebradas el día 16 de febrero de 1944 en el Hipódromo Las Monjas. La Corte de Distrito de San Juan, después de celebrada una vista, declaró con lugar una petición de *injunction* radicada por el jockey Maldonado, prohibiendo a los demandados, la Comisión Hípica Insular y el Jurado, poner en efecto la suspensión decretada. En este recurso alegan los demandados que la corte

inferior erró al resolver que el Jurado no cumplió con las disposiciones del inciso H del artículo 96 del Reglamento de la Comisión Hípica; al resolver que el Presidente del Jurado, Dr. Juan Font Suárez, al declarar como testigo en la investigación del caso, no lo hizo bajo juramento porque no lo prestó ante persona autorizada para administrarlo; al resolver que la orden de citación, dirigida al apelado por el Jurado, no exponía un hecho del cual el apelado pudiera defenderse y al imponer a los apelantes las costas y el pago de cincuenta dólares por concepto de honorarios de abogado.

▮ Interpretando el alcance del inciso H del artículo 96 del Reglamento aprobado por la Comisión Hípica Insular [1] dijimos en el caso de *Hernández* v. *Comisión Hípica, et al.*, 50 D.P.R. 100, 102, lo siguiente:

"Convenimos en que no fué la intención de los redactores de dicho inciso que se observaran todas las solemnidades de un juicio. El Jurado de un hipódromo no está en condiciones de celebrar un juicio completo. Estamos muy convencidos de que se exigían muchas menos formalidades. Creemos que bastaría que los testigos y el acusado fuesen citados, juramentados y examinados de manera informal y que se le diera al *jockey* la oportunidad de llamar a otros testigos, quizá a algunos de los otros *jockeys* que tomaron parte en la carrera."

Fué principalmente a base de esta decisión que la corte inferior resolvió que en el caso de autos la prueba demostró que el Jurado no había cumplido con los requisitos del inciso H del artículo 96, supra, primero, porque al declarar en la investigación practicada por el Jurado el Dr. Juan Font Suárez, presidente de dicho organismo, no lo hizo bajo juramento; segundo, porque el Dr. Font Suárez, con anterioridad al día de la vista le tomó declaración a varias personas las cuales no fueron citadas ni declararon bajo jura-

---

[1] Inciso (*h*) del artículo 96 del Reglamento, Reglas y Condiciones adoptados por la Comisión Hípica Insular de Puerto Rico: "Antes de imponer castigo alguno, deberá practicar, hasta donde sea posible, una investigación de los hechos denunciados, tomando todas las declaraciones bajo juramento y dando la oportunidad al querellado de ser oído en su defensa."

mento durante la investigación ante el Jurado, privando al apelado del derecho de oír e interrogar a dichas personas y tercero, porque la citación que. se hizo al jockey Maldonado no especificaba ningún hecho del cual pudiera él defenderse.

De la prueba aparece que si bien en la investigación practicada por el Jurado no se cumplió estrictamente con el formulismo de que el Dr. Font Suárez levantara la mano y jurara decir verdad al declarar ante otro miembro del Jurado, él manifestó expresamente ante dicho jurado que lo que declaraba lo hacía bajo juramento. Tanto el Dr. Font Suárez como el miembro del Jurado Sr. Luis Bigles, declararon que el primero declaró ante el segundo, bajo juramento, ya que la costumbre seguida por dicho organismo al efectuar sus investigaciones era hacer constar a los testigos que sus declaraciones eran bajo juramento y que en esta misma forma fué que declaró el propio jockey Maldonado.

Nuestros estatutos no requieren ninguna forma especial para prestar y tomar una declaración bajo juramento.[2] La afirmación del Dr. Font Suárez, de que lo que declaraba lo hacía bajo juramento, hecha ante el Sr. Bigles, quien como miembro del Jurado estaba autorizado para tomar juramentos de acuerdo con el artículo 18 de la Ley Hípica Insular, es suficiente, a nuestro juicio, para establecer el hecho de que el Dr. Font Suárez declaró bajo juramento.

■ En cuanto a la citación hecha al apelado para comparecer a la investigación ante el Jurado, ninguna forma especial de citación requiere el inciso H del artículo 96, supra,

---

(2) Por el contrario el artículo 118 del Código Penal, contenido en el capítulo que trata sobre el delito de perjurio, dispone lo siguiente:

"§118.—(119 Cal.) JURAMENTO, DEFINICIÓN. La palabra 'juramento', empleada en el precedente artículo, comprende una afirmación, así como toda otra forma de confirmar la verdad de lo que se declara.

"FORMA DEL MISMO. Podrá adoptarse la forma de prestar el juramento que el testigo tuviere por más obligatoria o solemne. *No se exigirá ninguna forma especial de juramento o afirmación.*" (Bastardillas nuestras.)

Y la sección anterior dispone en parte que "No se admitirá como defensa en ninguna causa por perjurio la circunstancia de haberse *prestado o tomado el juramento en forma irregular.*"

y la que se expidió en este caso al expresar que se le citaba para "celebrar la vista en el caso que contra usted se sigue por infracción al artículo 249 del reglamento, consistente la infracción en la negligencia en que usted incurrió al correr el caballo Caridulce en la primera carrera celebrada el día 16 de febrero de 1944 . . . " y que él podía comparecer "con aquella prueba que tenga a bien someter a la consideración del Jurado en su defensa" fué suficiente para informar al apelado del cargo que se le hacía.

■■ Consideramos que la corte inferior erró en cuanto al primero y tercero de los fundamentos apuntados pero no así en cuanto al segundo que es suficiente para sostener la sentencia dictada de acuerdo con lo resuelto, no sólo en el caso de *Hernández* v. *Comisión*, supra, sino también en los de *Sifre* v. *Pellón, Juez*, 54 D.P.R. 587 y *Romany* v. *Jurado de los Hipódromos*, 55 D.P.R. 325. La prueba demuestra que el Dr. Font Suárez, antes del día de la vista oficial celebrada por el Jurado, hizo una investigación privada con distintas personas en cuanto a la forma en que el peticionario se condujo en la primera carrera del día 16 de febrero de 1944. De la declaración del Dr. Font Suárez aparece lo siguiente:

"P.—Fuera del jockey, aparte del jockey ¿a quién más le tomaron declaración?

"R.—Personalmente desde luego yo hice. . . .

"P.—¿A qué testigos?

"R.—Yo hice investigaciones por fuera de personas hípicas.

"P.—¿A quién le preguntó usted?

"R.—A distintos hípicos.

"P.—Por ejemplo, ¿a quién?

"R.—Realmente no recuerdo los nombres.

"P.—¿Una de las personas a quién Ud. le preguntó?

"R.—Yo no le sé el nombre, Maestro Goyo un zapatero de la Parada 17.

"P.—¿Usted investigó con él respecto a la conducta del jockey?

"R.—Sí señor.

"P.—¿A quién más investigó?

"R.—Investigué con un señor que trabaja en la Compañía de la Luz que frecuenta mucho las cuadras.

"P.—¿Cómo se llama él?

"R.—Se llama Victoriano, no sé el apellido.

"P.—¿Todo eso era en relación al jockey, a si el jockey había corrido negligentemente el caballo?

"R.—La conducta del jockey, eso fué después.

"P.—¿La conducta del jockey a ver si había corrido el caballo negligentemente o no?

"R.—Bueno, desde luego.

"P.—Lo que le pregunto es ¿fué con relación al jockey?

"R.—Respecto a la conducta del jockey en la carrera.

"P.—¿En otras palabras, si lo había corrido bien o mal?

"R.—La opinión de ellos.

"P.—¿A quién más le preguntó, con quién más investigó?

"R.—Bueno, yo he citado ya dos individuos.

"P.—¿Qué otras personas? R.—Otras personas."

Aún cuando al principio el Dr. Font Suárez negó que la información que obtuvo privadamente de ciertas personas en cuanto a la forma en que actuó el apelado durante la primera carrera objeto de la investigación influyera en su ánimo al resolver como jurado el caso en contra del apelado, más adelante en su declaración admitió que "Desde luego yo quiero hacer la salvedad de que la investigación que yo he hecho sobre esas personas la he hecho personalmente para solidificar o variar el criterio que yo hubiese tenido." Y al preguntársele "¿Su criterio en cuanto a si había corrido negligentemente o no el jockey?", contestó en la afirmativa.

No tenemos duda de que habiendo sido el Dr. Font Suárez el único testigo que declaró en contra del apelado en la investigación lo hizo con opinión previamente formada en cuanto a la negligencia del jockey y que no habiendo sido citados para declarar en la investigación ante el Jurado las personas a quienes interrogó privadamente el Dr. Font Suárez, se privó al apelado de la oportunidad de conocer sus testimonios, contrainterrogarlos y defenderse adecuadamente. Es obvio que el Jurado no cumplió con los requisitos mínimos exigidos por el inciso H del artículo 96 del Reglamento, supra, según lo hemos interpretado y aplicado en los casos

anteriormente citados y en su consecuencia no erró la corte inferior al así resolverlo.

■ Por último se señala como error la concesión de costas y honorarios de abogado. Las primeras son mandatorias de acuerdo con el artículo 327 del Código de Enjuiciamiento Civil según fué enmendado por la Ley núm. 94 de 1937 (Leyes de 1936–37, pág. 239) y los segundos, discrecionales dependiendo su concesión de la temeridad de la parte perdidosa. Dadas las cuestiones envueltas en el caso de autos somos de opinión que los apelantes no fueron temerarios al defenderse de la petición.

*Debe modificarse la sentencia apelada eliminándose la concesión de cincuenta dólares en concepto de honorarios de abogado y así modificada, se confirma.*