STATE OF MARYLAND *vs.* GEORGE W. STRAUSS.

*Power of the Board of Police Commissioners of Baltimore
City, under the Act of 1867, ch. 367, to close Bar-rooms and
Drinking saloons—The order to close must be for a short
and Definite space of time, expressed on its face—Demurrer
to Indictment sustained.*

The Act of 1867, ch. 367, authorized the Board of Police Commissioners of
Baltimore City, whenever in their judgment the public peace and tranquillity
should require it, to order all bar-rooms and drinking saloons to be closed
"*temporarily,*" and made it a misdemeanor to disobey such order "*during
such period as the said Board shall so forbid.*" On the 22nd of July, 1877,
the said Board issued an order requiring all bar-rooms and drinking saloons
"to be temporarily closed, that is to say, to be closed until further notice."
G. W. S. was indicted in the Criminal Court of Baltimore City for a viola-
tion of this order, and demurred to the indictment. HELD :

1st. That the Act of 1867, ch. 367, authorized the Board of Police Commis-
sioners of Baltimore City to require all bar-rooms and drinking saloons in
said city to be closed for a *short* but *definite period of time,* to be *specified on*

State *vs.* Strauss.

the face of the order, and any order which by its terms was to operate *"until further notice"* was unauthorized and void.

2nd. That the indictment was therefore bad, and the demurrer must be sustained.

APPEAL as upon writ of of error from the Criminal Court of Baltimore City.

George W. Strauss was indicted on the 8th September, 1877, in the Criminal Court of Baltimore City. The indictment alleged that the Board of Police Commissioners of the City of Baltimore, on the 22nd of July, 1877, judging that the public peace and tranquillity required the same, and having lawful authority under the laws of this State so to do, ordered any and all bar-rooms, bars, drinking houses, and other places where liquor was usually sold in the said city, to be temporarily closed; that is to say, to be closed until further notice; and that at the time of the commission of the offence thereinafter charged, no such notice had been given by the said Board of Police Commissioners; that the said George W. Strauss, well knowing the premises, but failing to obey said order, did on the 23rd of July, 1877, being then the keeper of a certain bar-room, situated in the City of Baltimore unlawfully keep open his said bar-room for the purpose of selling and furnishing liquor thereat, &c. The traverser demurred to this indictment, and the Court sustained the demurrer, and ordered judgment of acquittal to be entered. Whereupon, at the prayer of the State, the case was removed to this Court as upon writ of error.

The cause was submitted to BARTOL, C. J., BOWIE, GRASON, MILLER and ALVEY, J.

*Charles J. M. Gwinn*, Attorney-General, for the State.
The petition of the State to have the record in this case removed, as upon writ of error into this Court, under Rule

1, designates the question of law by the decision of which the State was aggrieved. It was the error of the Court in determining by the allowance of the demurrer, that the indictment was defective because of the absence of any sufficient averment in said indictment, that the Board of Police Commissioners of the City of Baltimore had directed all bar-rooms, bars, drinking houses, and other places where liquor is usually sold in the City of Baltimore, to be closed *for a definite period of time.*

The Board of Police Commissioners of Baltimore City derived its existence and general powers from the Act of 1867, chapter 367. It is within the limits assigned for its jurisdiction, the depository of the police power of the State. *Mayor, &c. vs. State,* 15 *Md.*, 393, 394, 466. It is its duty to prevent crime, to arrest offenders, to protect the rights of persons and property, to guard the public health, and to preserve the public peace within the limits of the City of Baltimore The Act, in addition to the general duties which it imposed, and to the general powers it granted, authorized the Board, (1867, ch 367, section 818,) whenever, in its judgment, the public peace and tranquillity might require the exercise of such power, to order the closing temporarily of all places where liquor is usually sold in the city of Baltimore, and to forbid the selling or furnishing of liquor at such places. It further provided that any proprietor or keeper of such place who refused or failed to obey such order, or who should sell or furnish liquor during such period as the said Board might so forbid, should be guilty of a misdemeanor.

This Act was partly remedial and partly penal. Its chief design was as a remedial statute It was a grant of those police powers which are necessary to the tranquillity of every well ordered community. *Sedgwick on Const. and Stat. Law,* 2nd *Ed.*, 435. Such powers require for their exercise, summary and preventive measures. The welfare of a State is more promoted by the repression of disorder and

the maintenance of peace and security in every locality, than it is by the prosecution and punishment of offences after they are committed.

In the construction of such statutes it is pre-eminently the duty of Judges to interpret them in such manner as will suppress the mischief and advance the remedy ; to put down all subtle inventions and evasions for continuing a mischief commenced *pro privato commodo;* and to add *pro bono publico,* force and life to the cure and remedy, according to the true intent of the makers of the Act    *Heydon's Case,* 3 *Coke Rep.,* 7 ; *Parkinson vs. State,* 14 *Md.,* 196.

The Court must take notice of the proclamation by the Governor of this State—an Act of State—dated July 21st, 1877, in which after referring to the riotous demonstrations which had taken place in the city of Baltimore on the preceding evening, as evincing a spirit of lawlessness, which, if not suppressed, would end in great public mischiefs, he called upon all law-abiding citizens of Baltimore to aid in the maintenance of quiet.    1 *Taylor on Evidence,* (6th *Ed.,*) *sec.* 5.

The order of the Board of Police Commissioners, alleged in the indictment, was issued after this proclamation, and after the occurrence of a scene of bloodshed and riot almost unexampled in the history of the community in which it occurred.    It was issued while disorders, culminating in great destruction of property, were occurring in other parts of the State.    It was issued at a time when examples of devastation and conflict had been set in other States, which threatened the security of all order-loving people in the City of Baltimore and in this State.    The measure was essential to the quiet and peace of the community.

The Board could not tell how long the disorder would last.    The danger was imminent.    In view of the whole situation of affairs, it would have been very inexpedient to direct that these places should be closed for a day only.    In view of the public danger and alarm existing at the

time—of which the proclamation of the Governor is sufficient evidence—it would have been eminently inexpedient to increase the public apprehension by directing that such places should be closed for a week or for a month ; for such an order would have been an official declaration to the public that the authorities did not look for the restoration of tranquillity within a shorter time.

Prudence, therefore, dictated to the Board the necessity of exercising their power of closing, and allowing the reopening of such places by separate acts. The order to close such places until further notice was information to the public and to those concerned, that this restriction would continue no longer than the necessity of the case required; and that upon the restoration of tranquillity, it would be terminated by a direct order removing it.

If the guiding principle in the construction of powers is to be derived from a consideration of the purpose which the agent or depository of the power is appointed to accomplish, *Mayor, &c. vs. Reynolds,* 20 *Md.,* 10, then, as the purpose of the power granted by the Act of 1867, ch. 367, sec. 818, was the preservation of the public peace and tranquillity, an order was valid which was precisely adapted to the prevention of the mischief of 'open drinking houses while the public disorders continued. The keepers of the drinking places required to be closed could not be made the judges of the time when they might properly re-open them. The Police Board did not know when that time would arrive ; and, therefore, they properly required such places to be closed until further notice

Questions of the rights of the keepers of the drinking houses ordered to be closed, do not properly enter into the inquiry. The constitutional limitations protecting private property, have no application to the exercise of police powers by a State. *Com. vs. Algier,* 7 *Cushing,* 84 ; *Cooley on Const. Lim.,* 572 ; *Bode vs. State,* 7 *Gill,* 329 ; *Sedgwick on the Const. of Stat.,* (2nd Ed.,) 435, 436.

*F. W. Brune, Jr.*, for the defendant in error.

The power conferred upon the Board of Police Commissioners by the Act of 1867, ch. 367, being a grant of extraordinary powers over the property and franchises of citizens, it should be strictly construed so as to injure their business as little as possible ; and any material variation from the authority granted will vitiate the whole proceedings. *The Canal Co. vs. R. R. Co.*, 4 *G. & J.*, 1 ; *Shawnee Co. vs. Carter*, 2 *Kansas*, 115 ; *Hall, &c. vs. Co. of Marshall*, 12 *Iowa*, 153 ; *Sedgwick on Stat. and Cons. Law*, 347--351.

There can be but two constructions fairly placed upon the language of this statute ; one, that this power is given to close the bar-rooms of Baltimore for an unlimited time, entirely in the discretion of the Board of Police ; the other that the right is given to the Board to close them for a certain definite " period," which must be temporary.

What then is the power delegated by the Act of 1857, ch. 367 ? It is a power given to a body of men to suspend the laws of a State ; to make that a crime which was not so before ; in other words, to give them power to pass a *law*, the breach of which is to be visited by indictment and prosecution like the breach of any of the criminal laws of the State. It may be a grave question whether the Legislature can confer its own constitutional functions of making laws on any one, or on any body of men. The grounds on which such a delegation can be allowed in this case, can be only that it is in the nature of a police regulation, but if such, it must be reasonable and within the power of the Legislature to confer.

The first construction, viz., That the Board of Police have the power to suspend, in their discretion, the business of liquor selling in Baltimore, would, if carried out, to its logical conclusion, confer on that Board in their discretion, and at any time their inclination or prejudice might lead them so to do, the power to practically pass

a prohibitory liquor law for the City of Baltimore. To destroy, at their will and pleasure, the recognized rights of a large portion of the community, is to do an act which the State itself should not attempt without the most serious deliberation, and under the most convincing proofs of its necessity.

The consequence of such order, if valid, might be the destruction of the value of property in which citizens have invested their means, at the invitation of the State, and under heavy charge for a license, the proceeds of which have gone into the State's own treasury.

Can it be contended that the Legislature intended to confer any such power on the Board of Police—a power not only, by the passage of such an order as this, " until further notice," to destroy the business of private citizens, but also to curtail the revenues of the State ? By the Constitution of Maryland, the Legislature alone is invested with the power of making laws and providing for the revenues and support of the State. How, then, can it confer on the Board of Police the power to regulate these vital matters, which it must do if this order to close the liquor shops of the City of Baltimore " until further notice," is to be sustained. *Coe vs. Schultz*, 47 *Barb* , 69 ; 1 *Dillon Mun. Corp.*, sec. 300 ; *Shafer vs. Mumma*, 17 *Md.*, 331 ; *Balto. Police Cases*, 15 *Md* , 376.

The other construction, which it is submitted is the right one, is that the order to be effective, must be for a definite, fixed time, temporary or brief in its duration.

This view was the one sustained by the Court below, and is not only the clear meaning of the language employed, but is the only reasonable interpretation to be put upon the intentions and purpose of the Legislature.

While every one will acknowledge that in times of riot and disturbance, for the preservation of the public peace, it may be a measure of wise precaution, to confer on those charged with the administration of the police, power to

remove anything calculated to influence the passions of the multitude, still it must be borne in mind, that while the public good may justify the injury of a certain class of the public for a time, the rights of that class are to be considered, and the restraints should be made as light as is consistent with the public safety ; so that, as was so well said by the Court below : " Justice seems to demand that those whose business is stopped by the exercise of such a power, should be informed at the same time for what period it is to be stopped."

As the Court below also suggested, if at the expiration of the appointed time, the preservation of the public peace still required the closing of the bar-rooms, the power of the Board would not then be exhausted, but the result could be obtained, and the difficulty obviated by the passage of a fresh order.

That this was the intention of the Legislature is manifested by the use of the word " temporarily," to show that it was to be a limited time, and the word " period," as limiting that time to a definite interval.   Temporarily is defined by Worcester and Webster to mean " for a time," " in a temporary manner," temporary meaning lasting only for a limited time, not of long duration.   Thus while that word does not necessarily denote a fixed portion of time, it certainly denotes a brief portion as contra-distinguished from an indefinite one.   The word *period* is defined by the same authorities to mean any specified interval of time, the whole idea conveyed by the word seeming to be that of a fixed termination or definite portion of time.

This being the phraseology of the Act, it is submitted that the language of the order, "until further notice," is too indefinite to meet the requirements of the Act, and the order is therefore void ; and the demurrer was properly sustained.

MILLER, J., delivered the opinion of the Court.

This case is brought up by the State, as upon writ of error, to have reviewed a judgment of the Criminal Court of Baltimore City, sustaining a demurrer to an indictment and discharging the accused. The indictment charges the defendant with disobedience of an order of the Board of Police Commissioners of the City of Baltimore, issued on the 22nd July, 1877, whereby the said Board "judging that the public peace and tranquillity required the same, and having lawful authority so to do, and in pursuance of the laws of said State in that behalf, ordered any and all bar-rooms, drinking houses, and all other places where liquor is usually sold in the City of Baltimore, to be temporarily closed, that is to say, *to be closed until further notice.*"

The true and only source of authority for an order of this character, is found in that part of the Act of 1867, ch. 367, which amends and re-enacts section 818 of Art. 4 of the Code of Public Local Laws, and declares that "the said Board of Police Commissioners are authorized and empowered, whenever in their judgment the public peace and tranquillity may require, to order the closing *temporarily* of any and all bar-rooms, bars, drinking houses, and liquor shops, and all other places where liquor is usually sold in the City of Baltimore, and forbid the selling and furnishing of liquor thereat, and any proprietor or keeper, or other person for such proprietor or keeper of any such drinking house, place or places where liquor is usually sold, who shall refuse or fail to obey such order of said Board of Police Commissioners passed in pursuance thereof, or who shall sell or furnish liquor from any such place or places *during such period*, as said Board shall so forbid shall be guilty of a misdemeanor, and it shall be the duty of every officer of police, policeman and detective who may be cognizant of any violation of this section, to report the same to the grand jury of the City

of Baltimore." It has been intimated in the brief of counsel for the defendant in error, that it is a grave question, whether the Legislature could confer such a power upon this Board of Commissioners, but we cannot entertain a doubt upon that subject. When this Board was first organized, the law creating it (Act of 1860, ch. 7,) was subjected to a most severe and exhaustive examination and assault, and the validity of all its provisions was vindicated and sustained by a most able and elaborate judgment of our predecessors. 15 *Md.*, 376. By that Act it was provided in general terms that it should be the duty of this Board of Police to prevent crime, arrest offenders, protect the rights of person and property, guard the public health, and preserve the public peace within the limits of the City of Baltimore. That part of the Act of 1867, which we have cited is but a legitimate extension of their powers granted for the purpose of attaining more effectually the same great objects, the prevention of crime, and the preservation of the public peace, and the only question we have now to decide is, does it authorize an order by the Board in the terms and to the effect of the one set out in this indictment? It has been argued that as the chief design of this clause of the Act was to prevent crime and preserve the public peace it should be construed as remedial statutes are construed. But it also contains penal provisions. It makes acts done at certain times unlawful and criminal, which at other times are lawful and authorized. The selling of liquor in the City of Baltimore has not been prohibited by legislation nor declared unlawful, but on the contrary it is licensed and sanctioned by law. Now if the summary and repressive measures which this section of the Act authorizes, do not, when considered in connection with its general purpose, require it should receive the strict construction which the Courts apply to penal statutes, it is safe to say they impose upon it the construction which belongs to like grants of legislative

power to municipal corporations, and that the validity of this order is to be determined by the same rules by which the validity of municipal ordinances passed under such grants are determined. And in respect to these the Courts adopt a strict rather than a liberal construction. Thus the Supreme Court in *Minturn vs. Larue*, 23 *How.*, 436, have said, "it is a well settled rule of construction of grants by the Legislature to corporations, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended within the words of the Act, or derived therefrom by necessary implication, regard being had to the objects of the grant. Any ambiguity or doubt arising out of the terms used by the Legislature must be resolved in favor of the public. This principle has been so often applied in the construction of corporate powers, that we need not stop to refer to authorities." The same general rule is laid down in 1 *Dillon on Mun. Corp*, sec. 55, and in sec. 250 notice is taken of the different forms of charters, some of which, without any specific enumeration of the purposes for which by-laws may be made, contain a general and comprehensive grant of power to pass all such as may seem necessary to the well being and good order of the place, while others authorize the enactment of by-laws in certain specified cases, and for certain purposes, and after this enumeration, contain general provisions that the corporations may make any other by-laws or regulations necessary to their welfare and good order not inconsistent with the Constitution or laws of the State. And "this difference" says the author, "is essential to be observed, for the power which the corporation would possess under what, for convenience, may be termed the general welfare clause, if it stood alone, may be limited, qualified, or when such intent is manifest, impliedly taken away, by provisions specifying the particular purposes for which by-laws may be made. It is clear that the general clause can confer no authority to

abrogate the limitations contained in special provisions. When there are both special and general provisions, the power to pass by-laws under the special or express grant *can only be exercised in the cases, and to the extent, as respects those matters,* allowed by the charter or incorporating Act; and the power to pass by-laws under the general clause, *does not enlarge or annul* the power conferred by the special provisions in relation to their various subject-matters, but gives authority to pass by-laws reasonable in their character, *upon all other matters* within the scope of their municipal authority, and not repugnant to the Constitution and general laws of the State." Now, while in other instances, powers for certain purposes have been conferred without limitation and in general terms, on this Board of Police, we have here not only an express grant of power for special purposes, but one in which the Legislature has prescribed the mode and limited the extent of its exercise. In fact from the very nature of the power itself, it would be very strange if its exercise had not been limited and restricted in some way. In so far as the degree of necessity, and the occasions on which it shall be exerted are concerned, the law has unquestionably made the Police Board the exclusive judges. Over that the Courts have no power of revision, but it may not be out of place to remark that the events which took place at or about the time this order was issued, imperatively required the Board to exercise this power. But whenever they exercise it the law provides they shall order these places to be closed only *" temporarily,"* and in the penal provision which immediately follows it is made a misdemeanor to disobey the order " during such *period* as the said Board shall so forbid." If any doubt or ambiguity rests upon the use of the term *"temporarily"* in one part of the section, it is removed by the word *" period,"* in the subsequent part. Reading the whole clause, and giving to the words used, their ordinary and accepted meaning and import, it seems

State *vs.* Strauss.

to us plain the Legislature has declared that these orders shall operate not only for a *short*, but a *definite* interval or portion of time, to be *specified on their face*, and we are all of opinion that an order which, by its terms, is to operate "*until further notice*" is unauthorized. The Attorney-General in his brief, has presented with great ability and force, many suggestions and reasons why it would better insure the public safety, and more readily quiet public apprehension and alarm, to exercise the power in the way in which the Board proceeded, and then after the necessity had passed away to revoke the order by a separate act, than to prescribe in the first instance a definite time for the operation of the order, but we are unable to find any legislative sanction for that mode of procedure. It is easy to perceive that an order fixing a definite time for its continuance will operate less harshly, and inflict less injury upon those against whom it is directed, than one of uncertain and indefinite duration, and this may have influenced the Legislature in imposing the limitation. But whatever may have been the motives of the law-makers, we find the law so expressed and have no power to change it. Nor will the construction we have found ourselves compelled to adopt, in any wise impair the efficiency of the power, for if the necessity and danger shall not have passed within the period specified in the order, it can be renewed, and if they shall cease before, it can be revoked.

It follows from the views thus expressed, there was no error in the judgment of the Criminal Court, in sustaining the demurrer to the indictment, and discharging the defendant, and it must therefore be affirmed.

*Judgment affirmed.*

(Decided 27th June, 1878.)