Las Monjas Racing Corporation, promovente, *v.* Comisión Hípica Insular, demandada.

Núm. 36.—*Sometido:* Diciembre 6, 1946. *Resuelto:* Marzo 11, 1947.

*F. Fernández Cuyar,* abogado de la promovente; *Diego O. Marrero* y *Luis E. Dubón,* abogados de la demandada.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

La peticionaria radicó en la corte inferior una petición de *injunction* contra la Comisión Hípica Insular. Sustancialmente alegó que es dueña del hipódromo Las Monjas para cuya explotación ha sido autorizada mediante licencia que le expidió la demandada, la cual no expiraba hasta el 31 de diciembre de 1946; que en consonancia con la asignación de días de carreras tenía derecho a celebrarlas en los días 17, 19, 21, 24, 26 y 28 de noviembre y 1ro. de diciembre de 1946; que el día 6 de noviembre de 1946 fué emplazada por la Comisión Hípica Insular para que, compareciera ante ella

el 12 de noviembre de 1946 para la celebración de una audiencia en relación con el cargo que se le hacía de infringir los artículos 39 y 260 del Reglamento(¹) aprobado por dicha Comisión; que se le conminó para que en dicha audiencia mostrase causas por las cuales no debían suspenderse indefinidamente las carreras en su hipódromo, apercibiéndole que las asignadas a la peticionaria serían celebradas en otros hipódromos. Alegó, además, que en el día y hora fijados para la audiencia compareció ante la Comisión y contestó la orden para mostrar causa, negando los hechos esenciales de la misma y levantando ciertas cuestiones de derecho; que la Comisión no presentó prueba alguna en apoyo de los cargos, alegando que no era necesario por su parte presentarla, toda vez que la Comisión y cada uno de sus miembros tenían conocimiento directo y personal de los hechos; que era a la peticionaria a quien incumbía probar su defensa; que la peticionaria protestó de esa resolución, expresó claramente su criterio de que la Comisión tenía la carga de la prueba para sustanciar los cargos y sometió el caso sin presentar evidencia; que el 12 de noviembre de 1946 la Comisión dictó resolución declarando a la peticionaria culpable de infracción

---

(¹)La alegada infracción consistió en no haber corregido todas las deficiencias que la Comisión le ordenó corregir en su hipódromo. Las dejadas sin corregir, según la Comisión, fueron las siguientes:

"1. El Palco de la Comisión no había sido instalado en el sitio designado por el Presidente de la Comisión Hípica Insular.

"2. Las instalaciones sanitarias del Grand Stand permanecen en muy mal estado.

"3. La pizarra y tablillas para anunciar los caballos que toman parte en cada carrera no habían sido instaladas.

"4. La cuadra existente en la pista entre los 1200 y 1100 metros continúa exactamente igual.

"5. El recorrido y nivelación de la pista en la curva de los 1000 a 1300 metros no ha sido llevado a efecto.

"6. Las aguas del zinc del paddock no han sido recogidas por medio de canales para evitar que invadan el frente de las jaulas de los caballos.

"7. En el paddock continúa viviendo una familia.

"8. La construcción del hangar donde debe guardarse el 'Starting Gate' durante el tiempo que lo utilice dicho hipódromo no ha sido terminado.''

a los artículos 39 y 260 del referido Reglamento y como castigo por tales infracciones le impuso la suspensión indefinida de la celebración de carreras en su hipódromo "hasta tanto las dichas deficiencias sean corregidas y *aceptadas* por la Comisión Hípica Insular." (Bastardillas nuestras. ) Terminó la peticionaria alegando que la resolución de la Comisión es nula e ilegal, entre otras razones: (*a*) porque priva a la peticionaria de su propiedad sin el debido proceso de ley, infringiendo así sus derechos a una oportunidad de defensa, a confrontarse con los testigos en su contra y a repreguntarles, así como a objetar a cualquier evidencia impertinente e inadmisible por cualquier motivo, antes de ser condenada; (*b*) porque en todo caso la Comisión carece de facultad para suspender por sí sola la celebración de carreras en los hipódromos de Puerto Rico, sin que medie justa causa y aprobación del Gobernador; y (*c*) porque la ley no autoriza a la Comisión Hípica Insular a imponer como penalidad o castigo por infracciones de su Reglamento. la suspensión de carreras y al así decretarlo, la Comisión usurpó funciones legislativas que no le han sido delegadas. Alegó además que la resolución de la Comisión es abusiva, arbitraria e ilegal y que de no impedirse su ejecución, la peticionaria sufriría daños irreparables, los cuales describe en la petición. A base de estas alegaciones y de otras que es innecesario reseñar aquí, la peticionaria solicitó de la corte *a quo* que expidiese un auto de injunction dirigido a la Comisión Hípica Insular prohibiéndole hacer cumplir su resolución de 12 de noviembre de 1946 suspendiendo las referidas carreras y que se abstuviese de autorizar que las mismas se celebrasen en cualquier otro hipódromo. Solicitó, además, un auto preliminar de injunction mientras se dictare el permanente y que hasta tanto se expedía el preliminar, se dictase una orden de entredicho.

La corte inferior dictó una orden de entredicho y para mostrar causa, pero a moción de la Comisión, la dejó sin

efecto y con fecha 20 de noviembre último, fundándose en la sección 4(3) de la Ley de Injunctions, según quedó enmendada por la Ley núm. 1, aprobada el 25 de febrero de 1946, ((1) pág. 3), se declaró sin jurisdicción y dictó sentencia desestimando la petición de injunction con imposición de costas a la peticionaria. Contra esta sentencia se interpuso el presente recurso de apelación.(²)

## I

██ Como la concesión de una licencia es un privilegio y no constituye propiedad ni produce derechos contractuales entre el concesionario y el Gobierno, su revocación no priva de derecho alguno garantizado por la Constitución. *People* v. *Department of Health,* 82 N. E. 187 (N. Y. 1907). Consecuentemente, al conceder una licencia, la Legislatura puede imponer las condiciones que estime convenientes para suspenderla temporalmente o para revocarla. En efecto, la Ley Hípica Insular, al conferir a la Comisión Hípica facultades para conceder licencias, le reservó el poder de suspenderlas temporalmente y el de cancelarlas o revocarlas. En cuanto a la suspensión temporal, la autorizó para decretarla sin necesidad de previa audiencia y no concedió revisión judicial. En cambio, la autorización para cancelar o revocar licencias la condicionó a que previamente diese oportunidad al conce-

---

(²)Interpuesta la apelación, la peticionaria solicitó de este Tribunal que dictase un auto de injunction en auxilio de su jurisdicción y que mientras se dictaba éste, se expidiese una orden de entredicho, lo cual se hizo, previa prestación de fianza. No llegó a dictarse el auto de injunction en auxilio de nuestra jurisdicción porque cuando la Comisión presentó su memorándum faltaba tán poco tiempo para el último día de carreras asignado a la peticionaria que no había tiempo razonable para resolver la cuestión, por lo que, cuando hubiera podido dictarse resolución, hubiera resultado académico el injunction, toda vez que todas las carreras que la Comisión había ordenado suspender se habrían ya celebrado mediante la orden de entredicho dictada por este Tribunal. En la vista del injunction, las partes estipularon someter el caso en sus méritos y en cuanto a esta faz del asunto el pleito no es académico, porque, tánto en la corte inferior como en este Tribunal, se expidieron órdenes de entredicho y podría la peticionaria tener responsabilidad en daños.

sionario de ser oído en su defensa y concedió a éste el derecho a revisión judicial.([3])

Fijemos ahora la diferencia entre una suspensión temporal y una revocación de licencia. Una vez establecida esa distinción, pasemos entonces a determinar si la orden de la Comisión Hípica de 12 de noviembre de 1946 de que se querella la peticionaria, es una suspensión temporal o si, no obstante titularla así la Comisión, constituye en realidad una cancelación de la licencia.

La suspensión temporal, en distinción de la cancelación, la cual tiene carácter de permanente, debe ser por un período definido, el cual debe constar de la faz de la orden decretando la suspensión. En el caso de *State* v. *Strauss,* 49 Md. 288, (1878), se interpreta una ley de Maryland que autorizaba

([3])La sección 7 de la Ley Hípica Insular, según fué enmendada por la Ley núm. 11 de 18 de abril de 1932, decía así:

"La Comisión Hípica Insular, podrá, *por justa causa, previa audiencia de partes y oportunidad de defenderse, suspender temporalmente* o cancelar la licencia de cualquier hipódromo, dueño de caballos, jockey, trainer o cuadrero; *Disponiéndose,* que cualquier resolución de la Comisión Hípica Insular cancelando cualquiera de dichas licencias, será apelable para ante la corte de distrito del lugar donde resida el apelante; la apelación no suspenderá los efectos de la resolución apelada a menos que la corte de distrito ante la cual se hubiere establecido apelación dictare, previa prestación de fianza, un auto de supersedeas. El procedimiento para esta apelación será el mismo que rige en la actualidad para las apelaciones de las cortes municipales a las cortes de distrito." (Leyes de 1932, págs. 199–200) (Bastardillas nuestras.)

Dicha sección 7, según fué enmendada por la Ley núm. 17 de 15 de julio de 1935, dice así:

"Toda licencia expedida por la Comisión Hípica Insular deberá tener impresas las condiciones bajo las cuales se concede, reservándose la Comisión el derecho de revocarla, cancelarla o *suspenderla temporalmente; Disponiéndose,* que para cancelar cualquiera de las licencias expedidas por la Comisión Hípica Insular, ésta concederá a la parte una previa audiencia y oportunidad de defenderse; *Disponiéndose, además,* que cualquier resolución de la Comisión Hípica Insular *cancelando la licencia de cualquier hipódromo* será apelable para ante la corte de distrito del lugar donde resida el apelante. La apelación no suspenderá los efectos de la resolución apelada, a menos que la corte de distrito ante la cual se hubiese establecido la apelación, dictare, previa prestación de fianza, un auto de supersedeas. El procedimiento para esta apelación será el mismo que rige en la actualidad para las apelaciones de las cortes municipales a las cortes de distrito, en casos civiles." (Leyes de 1935, Ses. Extraor., pág. 97). (Bastardillas nuestras.)

a la Junta de Comisionados de Policía de Baltimore para que siempre que a su juicio la paz y tranquilidad públicas lo requiriesen, ordenase el cierre temporal de todas las tabernas en la ciudad. Disponía, además, dicha ley, que toda persona que rehusare o dejare de cumplir dicha orden, incurriría en *misdemeanor*. Se imputó a Strauss el haber rehusado cumplir una orden de dicha Junta, en la cual se disponía que los salones de bebidas fueran cerrados temporalmente "hasta nueva orden." Al absolver al acusado, declaró la corte que aunque la Legislatura no se había excedido en su autoridad al conferir tal poder a la Junta de Comisionados de Policía, sin embargo, ésta se había excedido, pues su autorización para cerrar las tabernas estaba limitada a un período corto y definido y consecuentemente la orden de cerrarlas "hasta nuevo aviso" era nula y no podía servir de fundamento a una acusación, toda vez que dicha orden resultaba indefinida.

En Black's *Law Dictionary* el vocablo "temporary" se define así: "Aquello que debe durar solamente durante un tiempo limitado, en distinción de lo que es perpetuo o *indefinido* en su duración." (Bastardillas nuestras.)

Examinemos ahora la orden de 12 de noviembre de 1946 para determinar su naturaleza. Dicha orden, en su parte dispositiva, dice así:

"POR TANTO, RESUELVE:

"1. Declara no probadas las llamadas causas de hecho y desestima en su totalidad las llamadas causas de derecho contenidas en el pliego sobre 'Mostración de Causas' radicado por la querellada;

"2. Suspender la celebración de carreras en el Hipódromo de la querellada, Las Monjas Racing Corporation, hasta tanto dichas deficiencias sean corregidas y *aceptadas* por la Comisión Hípica Insular;

"3. Ordenar, como por la presente ordena, al Juez de Inscripciones para que proceda a celebrar las inscripciones para las carreras que han de llevarse a cabo los días 17 y 19 de noviembre de 1946, el día 13 de noviembre de 1946, a las 10:00 de la mañana, en el Hipódromo Las Casas, para que dichas carreras de los referidos días se lleven a efecto en dicho Hipódromo Las Casas.

"4. Que hasta tanto Las Monjas Racing Corporation corrija las deficiencias a que se refiere esta Resolución, las carreras restantes correspondientes a su turno, serán llevadas a efecto en los otros dos hipódromos de acuerdo con la distribución que haga la Comisión Hípica Insular.

"5. Estos hipódromos correrán dichas carreras sin perjuicio de sus turnos ya distribuídos con anterioridad, según la resolución de esta Comisión de diciembre 14 de 1945." (Bastardillas nuestras.)

La orden de 12 de noviembre de 1946, como hemos visto, condena a la peticionaria a no celebrar carreras en su hipódromo hasta tanto las deficiencias que hemos apuntado en la nota *1* hayan sido corregidas y *aceptadas* por la Comisión. Suponiendo que tales deficiencias pudiesen ser inmediatamente corregidas—cosa que es físicamente imposible dada la naturaleza de las deficiencias—y que la peticionaria, por esa razón, tuviese en sus manos hacer definida la fecha de la terminación de las obras, cabe preguntar ¿en qué fecha las aprobará la Comisión? El efecto legal es el mismo que el de la condición interpretada en el caso de *State* v. *Strauss,* supra. Allí podría abrirse la taberna cuando la Junta de Comisionados de Policía tuviese a bien dictar "su nueva orden." En el presente caso, la peticionaria podría celebrar carreras cuando, luego de terminadas las obras, la Comisión tuviese a bien notificarle la aceptación de las mismas, lo cual lo mismo podría ser una semana que dos o tres o más, después de terminadas las obras. Resultando indefinida la orden, no puede ésta ser considerada como una suspensión temporal.

No siendo ésta una suspensión temporal y estando exclusivamente en manos de la Comisión el poder dilatar la aceptación de las obras para corregir las deficiencias hasta el 1ro. de diciembre de 1946, fecha en que vencía la licencia de la peticionara por ser ese el último día en que podía celebrar carreras en el año 1946, tenemos que concluir que la orden de 12 de noviembre de 1946 constituye una cancelación.

Tratándose de una cancelación o revocación de licencia; ¿actuó la Comisión dentro de la autoridad conferídale

por el art. 7 de la Ley Hípica, dispositiva de que "para cancelar cualquiera de las licencias expedidas por la Comisión Hípica Insular, ésta concederá a la parte una previa audiencia y oportunidad de defenderse"? La Comisión notificó los cargos a la peticionaria y señaló día para la audiencia. Ese día compareció la peticionaria y negó los cargos, pero la Comisión se abstuvo de presentar evidencia alguna para substanciarlos, alegando que por la investigación que había hecho previamente, se había enterado de que las deficiencias no habían sido corregidas.

Esa no es la audiencia que contempla la ley. En el caso de *Int. Com. Comm.* v. *Louis. & Nash. R. R.*, 227 U. S. 88, 93 (1913), se dijo por el Tribunal:

"La Comisión es un cuerpo administrativo y aun cuando actúa en una capacidad cuasi judicial, no está limitada por las reglas estrictas, sobre admisibilidad de evidencia, aplicables en los pleitos entre litigantes privados. *Int. Com. Comm.* v. *Baird*, 194 U.S. 25. Pero cuanto más liberal es la práctica en la admisión de testimonio, tanto más imperativa es la obligación de seguir las reglas fundamentales de evidencia por las cuales se reclaman o defienden derechos. En tales casos los comisionados no pueden actuar basados en su propia información como antiguamente podían hacerlo los jurados. Todas las partes deben ser completamente informadas de la evidencia sometida o que ha de ser considerada, y debe dárseles oportunidad de repreguntar testigos, de examinar documentos y de ofrecer evidencia en explicación o refutación. De ninguna otra manera puede una parte sostener sus derechos o hacer su defensa. De ningún otro modo puede ella poner a prueba la suficiencia de los hechos para sostener la conclusión, porque de lo contrario, aunque apareciese que la orden no estaba basada en evidencia, la manifiesta deficiencia podía ser siempre explicada bajo la teoría de que la comisión tenía ante sí, extraña y desconocida, pero presuntivamente suficiente información para sostener su conclusión. *United States* v. *Baltimore & Ohio S. W. R. R.*, 226 U.S. 14."

Sostienen la misma doctrina *Crowell* v. *Benson*, 285 U. S. 22, 48 (1932) y *Moran* v. *School Committee of Littleton*, 59 N. E.2d. 279, 281 (Mass. 1945).

Establecido que en el presente caso no se concedió a la peticionaria la previa audiencia y oportunidad de defensa que exige la sección 7 de la Ley Hípica Insular, procede ahora determinar si erró la corte a quo al denegar la petición de injunction por falta de jurisdicción.

## II

 Como hemos visto, la corte a quo, al desestimar la petición de injunction, se fundó en la sección 4 de la Ley Para Definir los Injunctions, etc., según fué enmendada por la Ley núm. 1 de 25 de febrero de 1946, ((1) pág. 3). Antes de proceder al estudio de esta ley, conviene tener presente la intención legislativa, según fué exteriorizada en la exposición de motivos que la precede. Dice así:

"Artículo 1.—Exposición de Motivos.—Cualquier ley aprobada por la Asamblea Legislativa de Puerto Rico debe considerarse constitucional a menos que y hasta tanto se le declare nula por sentencia final, firme, inapelable e irrevisable. La expedición de órdenes de entredicho y de *injunctions* por las cortes inferiores, en relación con la observancia de estatutos públicos y demás actuaciones de la administración pública, desorganiza el proceso ordenado de gobierno y crea incertidumbre y confusión en la observancia de la ley por motivo de la diversidad de opiniones entre los distintos jueces en cuanto a la validez o constitucionalidad de diversos estatutos y actos públicos".

En armonía con la Exposición de Motivos, la sección 4 dice así:

"Sección 4.—No podrá otorgarse un injunction ni una orden de entredicho:

"1. * * * * * * *

"2. * * * * * * *

"3. Para impedir la aplicación u observancia de cualquier ley de la Asamblea Legislativa de Puerto Rico, o el cumplimiento de cualquier actuación autorizada por ley de la Asamblea Legislativa de Puerto Rico, de un funcionario público, de una corporación pública, o de una agencia pública, o de cualquier empleado o funcionario de dicha corporación o agencia, a menos que se hubiera determinado por sentencia final, firme, inapelable e irrevisable, que dicha ley o actuación autorizada por ley es inconstitucional o inválida.

"Cualquier injunction preliminar, permanente, o con carácter de entredicho, *incluso cualquier orden para hacer efectiva la jurisdicción de un tribunal o para asegurar la efectividad de una sentencia,* que se haya expedido en las circunstancias expuestas en este inciso 3 y que esté en vigor a la fecha de vigencia de esta Ley o que en lo sucesivo se expidiere, será nulo e inefectivo." (Bastardillas nuestras.)

El transcrito precepto legal contiene dos modalidades:

(*a*) Prohibe la expedición de injunction u orden de entredicho contra un funcionario público, corporación pública, etc., para impedir la aplicación u observancia de cualquier ley de la Asamblea Legislativa de Puerto Rico, a menos que previamente se hubiere determinado por sentencia final, firme, inapelable e irrevisable, que dicha ley es inconstitucional o inválida; y

(*b*) Prohibe la expedición de injunction u orden de entredicho para impedir el cumplimiento de cualquier *actuación* de un funcionario público, corporación pública, etc., la *cual actuación esté autorizada por ley* de la Asamblea Legislativa, a menos que previamente se hubiere determinado por sentencia final, firme, inapelable e irrevisable, que dicha actuación es inconstitucional o inválida.

En el presente caso la constitucionalidad o validez de la Ley Hípica Insular no ha sido cuestionada. Lo que ataca la peticionaria es la constitucionalidad o validez de la actuación de la Comisión. Siendo ello así, el primer paso que debemos dar para resolver si el caso de la peticionaria está comprendido dentro de la prohibición de la sección 4, es determinar si la actuación de la Comisión es una actuación autorizada por ley. El criterio para determinar si la actuación de un funcionario está autorizada por ley, no consiste en que la actuación sea válida o constitucional. Precisamente la determinación de la constitucionalidad o validez de la actuación es lo que previamente a la expedición del entredicho o auto de injunction, debe decretarse por sentencia final, firme, inapelable e irrevisable. La pauta a seguir debe ser

determinar si la actuación está comprendida dentro de la autoridad conferida por la ley al funcionario, corporación pública, etc.

Ya hemos visto que la autoridad concedida por ley a la Comisión Hípica para cancelar cualquier licencia expedida por ella, fué condicionada a que concediese a la parte "una previa audiencia y oportunidad de defensa." Por consiguiente, la actuación de la Comisión Hípica al cancelar la licencia de la peticionaria sin concederle la audiencia y oportunidad de defensa, es una actuación inválida no autorizada por la ley contra la cual no es de aplicación la prohibición de la sección 4 de la Ley de Injunction. Consecuentemente erró la corte inferior al denegar la petición de injunction por falta de jurisdicción.

■ Si no existiera un remedio adecuado en el curso ordinario de la ley, procedería el recurso de injunction que en este caso solicitó la peticionaria. *Maldonado* v. *Comisión Hípica,* 64 D.P.R. 503 y *Sifre* v. *Pellón, Juez,* 54 D.P.R. 587. Pero la Ley Hípica Insular, en su sección 7, como hemos visto (nota 3), concede al perjudicado por la cancelación de la licencia de un hipódromo, un remedio adecuado y tan eficaz como el de injunction. Dicho remedio consiste en apelar para ante la corte de distrito donde reside el apelante. Es verdad que esa apelación no suspende los efectos de la resolución apelada, pero su suspensión puede obtenerse solicitando de la corte de distrito un auto de supersedeas previa prestación de fianza. Este remedio, por supuesto, excluye el de injunction, y tratándose en este caso de una actuación no autorizada por ley, el auto de supersedeas no estaría prohibido por la Ley núm. 1 de 25 de febrero de 1946 ((1) pág. 3).

■ Siendo ello así, *la sentencia que desestimó la petición de injunction y canceló la orden de entredicho, aunque predicada en fundamentos erróneos, es correcta en su resultado y por lo tanto procede su confirmación.*

El Juez Asociado Sr. Snyder no intervino.